### UNITED STATES of America
### v.
### Francis G. **BROOKS**, Appellant.
### No. 22330.

United States Court of Appeals
District of Columbia Circuit.

Argued May 2, 1969.

Decided Dec. 17, 1969.

Mr. Richard F. Kessler, Washington, D. C. (appointed by this court) for appellant. Mr. Robert L. Randall, Washington, D. C. (appointed by this court) was on the brief, for appellant.

Mr. D. William Subin, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Lawrence Lippe, Asst. U. S. Atty., were on the brief, for appellee.

Before BURGER,* TAMM and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

Appellant was indicted for seven offenses arising out of two robberies which occurred in the District of Columbia. The first three counts, for armed robbery, robbery, and assault with a dangerous weapon, related to an attack upon a victim named Ellis; counts four through six, charging armed assault with intent to commit robbery, assault with intent to commit robbery, and assault with a dangerous weapon, involved a victim named Jackson. The final count charged appellant with carrying a dangerous weapon. After a three-day trial in the district court, a jury found the appellant guilty on all counts except the lesser included offenses charged in counts two and five. In this appeal the appellant contends that the judgment must be reversed because of the allegedly coercive circumstances under which the jury was sent back for further deliberations after a poll revealed that two jurors had reservations about the verdict. Our review of the record reveals no reversible error, and thus we affirm.

After the jury had deliberated for more than seven hours, the forelady announced that they had reached a verdict of guilty on counts one, three, four, six, and seven. The following exchange then took place:

THE DEPUTY CLERK: Members of the jury, your forelady says that you find the defendant guilty as charged, and that is your verdict so say each and all of you?

(The jury responded in the affirmative.)

[COUNSEL FOR THE DEFENDANT]: Your Honor, I ask that the jury be polled, not as to each and every count but just as to the total verdict.

THE COURT: Very well.

THE DEPUTY CLERK: Mrs. Haltiwanger, is your verdict the same as stated by your foreman?

JUROR HALTIWANGER: Yes.

THE DEPUTY CLERK: Miss Malodobra—

THE COURT: What was that first juror? We didn't get the name.

THE DEPUTY CLERK: Mrs. Haltiwanger.

THE COURT: Is your verdict the same as stated by your forelady?

JUROR HALTIWANGER: You speak of each count?

THE COURT: Well, she gave you all the counts. Are you in agreement with that verdict?

JUROR HALTIWANGER: Not all the way. You mean am I in agreement with the answers she gave?

THE COURT: That's exactly what I want to know. On which particular count are you in disagreement?

JUROR HALTIWANGER: Mr. Ellis, as far as armed robbery.

(Tr. 198–199.) At this point, the Court was confronted with a situation similar to that which we recently dealt with *en banc* in Williams & Coleman v. United States:[1] the complexity of the case, and perhaps the inadequate acoustics of the courtroom, created confusion among the jurors, and this fact was not revealed until the jury poll was in progress.

All of the parties apparently realized the risk of mistrial inherent in this situation, and, at the instance of Government counsel, a conference was held at

---

* Circuit Judge (now Chief Justice) Burger did not participate in the disposition of this case.

1. 136 U.S.App.D.C. ——, 419 F.2d 740 (Oct. 23, 1969).

the bench. There the presiding judge suggested that "I can throw that count out if you want me to," and defense counsel replied, "I would say yes, *but I would ask to have the rest of the jury polled"* (Tr. 199, emphasis added). The Court granted this request. Further polling revealed that one other juror, Mrs. Taylor, had reservations about "the Ellis count" of the indictment. At this point counsel again approached the bench, and the Court suggested that he might accept a partial verdict on those counts not affected by the two jurors' indecision. Defense counsel made no objection to this proposed procedure, other than the suggestion that the Government might withdraw the charges, but further discussion at the bench raised the possibility that the confusion might affect other counts of the indictment. Therefore, the Court again queried the two dissenting jurors in an attempt to determine the extent of their confusion. After summarizing the first three counts of the indictment, the Court asked Mrs. Haltiwanger which portions of the verdict she disagreed with. She replied: "I am sorry, Your Honor. I got mixed up once before on that. * * * So, I would like to retract that. I'm awfully sorry. I had a misunderstanding in the panel room" (Tr. 203). The Court then asked her twice whether she was in accord with the guilty verdict announced on the first count, and she stated unequivocally that she was (*Id.*). The Court then addressed Mrs. Taylor, summarized the first three counts again, and asked: "Now, to what do you take exception?" The following dialog ensued:

> JUROR TAYLOR: The armed robbery part. I had requested to hear some testimony and I didn't hear the testimony, and in the absence of it I did say yes.

> THE COURT: Are you satisfied with the verdict as announced by your forelady on the third count, assault with a dangerous weapon?

> JUROR TAYLOR: On the robbery count?

> THE COURT: On the armed robbery count, you said you are not satisfied.

> JUROR TAYLOR: That is right.

> THE COURT: The robbery count, as the verdict of the jury stands, is merged into the armed robbery so that we proceed to the third count. Are you in agreement with the verdict as announced by your forelady that he is guilty of assault with a dangerous weapon upon Ellis?

> JUROR TAYLOR: Yes, I did agree to that.

> THE COURT: So that your disagreement is only as to the armed robbery count, is that it?

> JUROR TAYLOR: I thought the two were interrelated. I agree that he was robbed.

> THE COURT: But you are not in agreement with the armed robbery verdict, is that it?

> JUROR TAYLOR: I agree to it, yes, but with reservations.

> THE COURT: Well, we can't have any reservations under the jury system.

> JUROR TAYLOR: I agree, then yes.

(Tr. 204–205.) At this point, a third conference was held at the bench, and the Court again solicited counsel's reaction to his proposal to accept a partial verdict on counts three through seven; the only objection interposed by defense counsel was a suggestion that the third count also be resubmitted to the jury, and the Court agreed. The Government's request for an *Allen* charge[2] was denied.

The Court then gave the jury a brief recapitulation of the instructions previously given on the first three counts. At the conclusion of this charge, Government counsel requested permission to approach the bench for a fourth conference. There he stated for the record his

---

2. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

understanding that there was no question about the jury's verdict on the last four counts. Defense counsel agreed, and remarked: "The case in which the question of announcement of how the jury stands is one which I was on in the Court of Appeals. It is the Mullins case.[3] In that case, the Court advised the trial courts not to allow the jury to notify the Court how the jury stands. Your Honor abided by that but it has come out" (Tr. 209).

Following this exchange, the jury retired and deliberated for twenty minutes. Upon returning, they announced that they had found the defendant guilty on the first and third counts. Another poll was conducted at the request of defense counsel, with all jurors expressing their agreement to the verdict. The Court then attempted to insure the accuracy of the verdict by questioning the two previous dissenters at greater length:

THE COURT: Mrs. Haltiwanger, in view of the reservations you expressed before, I want it to be very clear upon the record that this is now your considered verdict.

JUROR HALTIWANGER: It definitely is, sir.

THE COURT: You have not been coerced by anybody into delivering this verdict?

JUROR HALTIWANGER: No.

THE COURT: You are delivering this verdict of your own free will because you think he is guilty?

JUROR HALTIWANGER: Yes, because it was probably my verdict in the beginning but I was mixed up in my thoughts.

THE COURT: Mrs. Taylor, you also expressed reservations. You say now that you do agree with the verdict as announced by your forelady. Do you have any reservations now as to this verdict?

JUROR TAYLOR: No.

THE COURT: Have you been coerced into changing your mind?

JUROR TAYLOR: No.

THE COURT: This is your verdict and you have arrived at it at [sic] your own free will?

JUROR TAYLOR: Yes.

(Tr. 212–213.) The Court then accepted the verdict.

■■■ Our evaluation of the procedures employed by the trial court must begin with Rule 31(d) of the Federal Rules of Criminal Procedure, which provides that "[i]f upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." Clearly, this provision invests the trial judge with a measure of discretion in assessing the impact of a dissenting vote during a jury poll, and the reasonable exercise of this discretion should be accorded proper deference by a reviewing court. As we noted in Jackson v. United States, 128 U.S.App.D.C. 214, 386 F.2d 641 (1967), the trial judge is in a much better position than an appellate tribunal to determine whether a recalcitrant juror's eventual acquiescence in a verdict was in fact freely given. The *Jackson* case also indicates that defense counsel plays a crucial role in interposing timely objections to potentially coercive procedures, both for the purpose of assisting the trial judge in choosing the best method of resolving an extremely delicate situation, and for the purpose of preserving in the record all relevant facts needed to support intelligent appellate

3. Mullin v. United States, 123 U.S.App. D.C. 29, 356 F.2d 368 (1966). In *Mullin*, we stated:
    While it is probably rare for jurors to reveal the standing of their vote to anyone before verdict or deadlock is found we commend to the District Court a fixed practice of admonishing every jury at the time it retires that it must not reveal the standing of its vote at any time to anyone, including the Trial Judge * * *.
    123 U.S.App.D.C. at 31, 356 F.2d at 370. In *the instant case*, the trial judge gave the jury this instruction (Tr. 190–191).

review. In the instant case it is significant that appellant's able trial counsel, who was sufficiently familiar with the problems of jury coercion to be able to cite the *Mullin* case from memory, not only failed to object to the questioning of the jury but also *requested* that polling continue after the jury's apparent lack of unanimity was revealed.[4] We are not convinced that the events which occurred after this request were so coercive of the jurors' free will as to constitute reversible error.

Appellant's reliance on the leading case of Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), is largely misplaced. In *Brasfield*, the trial judge recalled the jury after several hours of deliberation and inquired what the numerical division among the jurors was. The Supreme Court reversed the conviction which followed this inquiry, stating:

> *Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. * * * Such a practice, which is never useful and is generally harmful, is not to be sanctioned.*

272 U.S. at 450, 47 S.Ct. at 135 (emphasis added). A jury poll, it is clear,

stands on quite a different footing: it has long been regarded as a "useful" and necessary device for preserving the defendant's right to a unanimous verdict[5] even though, as appellant points out, its psychological effect may be to exert more pressure toward conformity than mere questions on numerical division because of its tendency to isolate the dissenting jurors.

The first poll, as we have stated, was properly conducted at the request of defense counsel; any additional coercion which may have resulted from further questioning was relatively slight, so far as we can determine from the record and the failure of defense counsel to object in spite of ample opportunity to do so.[6] At the same time, the Court's effort to preserve that portion of the verdict which was untainted by the dissenting jurors' reservations—a procedure approved by the parties at trial and not contested in this appeal—necessitated inquiry into the extent of the dissenters' disagreement. We are convinced that this inquiry was "essentially neutral" rather than "calculated to affect [the jurors'] judgment,"[7] and that it did not impair any of the appellant's substantial rights.

Affirmed.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge (concurring):

Though I was among those who in Williams (and Coleman) v. United

---

4. Failure to grant defense counsel's request for a second poll of the jury when the first poll suggested the possibility that their verdict was qualified or conditional has been held to constitute reversible error. Cook v. United States, 379 F.2d 966 (5th Cir. 1967).

5. *See, e. g.,* Humphries v. District of Columbia, 174 U.S. 190, 19 S.Ct. 637, 43 L.Ed. 944 (1899).

6. It merits emphasis that a total of four conferences took place at the bench during the course of the proceeding here in issue, and that the Court was consistently solici-

tous of defense counsel's views as to the proper method of resolving the ambiguities in the verdict. A significantly different situation would be presented if the record indicated that questioning of jurors took place in a coercive atmosphere; as we stated in *Mullin*, it is a "precarious undertaking" for a trial court to give additional instructions or take similar action when the numerical division of the jurors is known. 123 U.S.App.D.C. at 31, 356 F.2d at 370.

7. Williams & Coleman v. United States, 136 U.S.App.D.C. ——, 419 F.2d at 746 (Oct. 23, 1969).

States[1] dissented from the *en banc* treatment accorded a superficially similar episode, I concur in Judge Tamm's opinion sustaining the conviction before us for review. *Williams*, needless to say, is binding on me, and with Coleman's conviction upheld under the circumstances there—which to three members of the court bespoke confusion and coercion of a juror—it would follow that Brooks must meet the same fate under the weaker circumstantial showing here. I think, however, that the facts of the two cases differ so markedly at really crucial points as to dictate that result anyway. So it is both with a feeling of intellectual honesty and a sense of judicial duty that I join in affirmance in this case.

In *Williams*, the doubting juror was asked four times about her verdict as to Coleman on one of the counts tried. The first three times she answered either "[i]nnocent" or "[n]ot guilty." Only when the question was put a fourth time did she say "[g]uilty," and that without any elucidation of her change in stance. Not until after the poll was resumed and completed, and she was revealed as the one juror forestalling an acceptable verdict, was the jury sent back to the jury room for its own determination on unanimity. When, 22 minutes later, the jury emerged to again announce a verdict of guilty, the defense sought no second poll and the court did not undertake *sua sponte* to conduct one. As indicated, a majority of the court concluded that the verdict survived Coleman's claims of disunity and coercion.

In the case at bar, there were two jurors, Mrs. Haltiwanger and Mrs. Taylor, who voiced reservations as to the verdict on count 1—charging armed robbery of Ellis—of the seven-count indictment. Unlike *Williams*, however, they were not peppered with inquiries as to what their individual verdicts were.[2] Rather, the trial judge, at the very first omen of disharmony, posed to counsel the suggestion that the jury deliberate further,[3] but defense counsel requested that the rest of the jurors be polled.[4] When the poll was completed, the judge again proposed a resubmission of count 1 to the jury but, because any trouble on that count could have also involved the other two "Ellis" counts, he settled, with the ostensible approbation of both counsel, upon a brief inquiry to ascertain the extent of the difficulty. Mrs. Haltiwanger retracted her prior manifestation of disagreement and, explaining that she had been confused, unequivocally voiced her concurrence in the verdict of guilt on count 1. Mrs. Taylor stated that she, too, agreed with that verdict, but "with reservations." That charted the course for the judge and, as in *Williams*, the jury was directed to deliberate further on the "Ellis" counts, in the judge's words, to "see if you can arrive at a unanimous verdict without any reservations whatever on the part of any juror."[5]

Twenty minutes later, the jury returned to the courtroom to report unanimous verdicts of guilt on those counts. Unlike *Williams*, another poll was con-

1. 136 U.S.App.D.C. ——, 419 F.2d 740 (1969).

2. See also Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F.2d 224 (1942).

3. See Fed.R.Crim.P. 31(d). Compare Williams v. United States, *supra* note 1, 136 U.S.App.D.C. at ——, 419 F.2d at 746; *id.*, 136 U.S.App.D.C. at ——, 419 F.2d at 752 (dissenting opinion).

4. I intimate no view as to whether, in the face of counsel's specific request, the judge could have directed further deliberations without completing the poll.

5. Concomitantly, the judge accepted the guilty verdicts on the "Jackson" counts. Compare Clainos v. United States, 82 U.S.App.D.C. 278, 281–282, 163 F.2d 593, 596–597 (1947). I cannot accept appellant's argument that this action portended any significant prejudice in the circumstances here.

ducted, and each of the jurors vouched individual agreement in those verdicts.[6] The judge then questioned Mrs. Haltiwanger and Mrs. Taylor in an effort to detect any sensitivity to any possible duress as to count 1. Mrs. Haltiwanger dismissed the thought and adhered to the verdict "because it was probably my verdict in the beginning but I was mixed up in my thoughts." Mrs. Taylor likewise responded that she was in no way coerced, and had reached her decision of her own free will.

As the court declared in *Williams*, "[i]t is basic to our system of justice that a verdict of guilty in a criminal case may stand only if freely given and unanimous."[7] That important value of jury trial remains constant only in the degree that judges—trial and appellate alike—insist upon true unanimity in jury verdicts. At the same time, it is obvious that the trial judge suddenly confronted with a problem in that regard must be indulged some flexibility as to the manner of dealing with it.[8] As shaped by the cooperative endeavors of court and counsel[9] toward a common end, the procedure under review, in my judgment, so far kept faith with precept as to call for affirmance of appellant's conviction.

6. Compare Williams v. United States, *supra* note 1, 136 U.S.App.D.C. ——, 419 F.2d at 752–53 (dissenting opinion).

7. *Id.* 136 U.S.App.D.C. at ——, 419 F.2d at 746. See also Andres v. United States, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948).

8. See Slocum v. United States, 325 F.2d 465, 468 (8th Cir. 1963) ; Shibley v. United States, 237 F.2d 327, 334 (9th Cir.), cert. denied, 352 U.S. 873, 77 S. Ct. 94, 1 L.Ed.2d 77 (1956).

9. See Jackson v. United States, 128 U.S. App.D.C. 214, 216, 386 F.2d 641, 643 (1967).