Lucien V. AMOS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 73–1819.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1974.

Decided May 15, 1974.

Rehearing and Rehearing En Banc Denied June 4, 1974.

Robert G. Duncan, Duncan & Russell, Gladstone, Mo., for appellant.

Mary A. Schneider, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Lucien V. Amos appeals his conviction on all counts of a 14-count indictment charging him with willfully aiding and assisting in the preparation of false and fraudulent income tax returns of various taxpayers in violation of 26 U.S.C. § 7206(2). He makes these contentions: (1) that the trial judge, Judge Paul X Williams,[1] committed error in coercively questioning one juror during a poll of the jury; (2) that the trial judge erred in permitting the prosecution to introduce evidence showing that prior to the dates covered by the indictment Amos had committed other crimes relating to income tax matters; and (3) that the trial judge erred in instructing the jury. We reject these claims and affirm the conviction.

Although Amos raises no claim of insufficiency of the evidence to support the convictions, we believe it helpful to briefly relate the factual background. Amos is a retired railroad postal service worker, who for several years has engaged in the practice of assisting taxpayers in the preparation of their federal income tax returns. Generally, these taxpayers were wage earners of modest incomes. The evidence disclosed that as to each count, Amos made false claims for deductions from the taxpayers' income. The false deductions ranged from a low of about $500 on the return covered by count one to a high of about $2,700 on the return covered by count four.[2] In all but one instance, the various taxpayers who signed the returns were unaware of the false deductions. When some of these returns were audit-

ed by the Internal Revenue Service, Amos attempted to cover up some false deductions by submitting falsified receipts in support of the deductions.

With this background, we turn to the issues raised on appeal.

## I

### THE JURY POLL

After deliberating for about an hour and fifteen minutes the jury returned with its verdict finding Amos guilty on all counts. The court then proceeded to poll the jury. The eighth juror polled, Mr. Crockett, stated that he did not join in the verdict of guilty as to all counts. Thereupon the following colloquy occurred:

THE COURT. Did you join in the verdict in any of the Counts?

MR. CROCKETT. Yes, sir.

THE COURT. The jury will retire to re-consider its verdicts, then as soon as you have reached unanimous verdicts—return the forms to Mr. Betts [jury foreman], there has been a misunderstanding. As soon as you have reached unanimous agreement, now - - - Now, Mr. Foreman, in as much as there are fourteen counts if there is unanimous consent on any counts indicate the ones on which it is unanimous because the Court would be inclined to receive that verdict that is unanimous as to a count; that would leave the jury to consider the ones that are not, am I making myself clear?

MR. BETTS. Yes, sir.

Since the jury had been instructed that its verdict on any one count should not control the verdict on any other count, Judge Williams proceeded to inquire of juror Crockett whether he agreed with his fellow jurors, who had

---

1. Of the Western District of Arkansas sitting by special assignment in the United States District Court for the Western District of Missouri.

2. In his testimony, Amos contended that errors appeared in the questioned returns be-

cause of honest mistakes made in their preparation or as the result of erroneous information received from the taxpayer. The jury resolved any dispute in the testimony in favor of the Government.

already responded, on any one count. Crockett indicated his disagreement with his fellow jurors' verdict on all counts except as to a guilty verdict on count four. The judge then questioned the remaining four jurors as to whether each agreed with the guilty verdict on count four. Upon receiving affirmative replies, the court announced that it would receive the verdict only on count four and that it would send the jury back to reconsider the remaining counts. At that point, counsel for Amos requested a further poll relating to count four. Accordingly, the court proceeded to re-poll the jury on count four. In responding to the court's further query, juror Crockett said, "I don't think the one that prepared the income tax, the preparer, was guilty."

At this point, the trial judge declined to accept any verdict and in part instructed:

> Ladies and gentlemen of the jury, none of these verdicts will be received. This is not a unanimous verdict and we cannot receive it.

The jury returned after 25 minutes with another guilty verdict. Again the court polled the jury, but this time all 12 agreed with the foreman's pronouncement of guilt. Thereafter the court further inquired of juror Crockett, who responded as follows:

> THE COURT. Now, since we have had the matter of the identity, Mr. Crockett, are you certain you understand?
>
> MR. CROCKETT. I am certain I understand.
>
> THE COURT. You intend to return a verdict of guilty on each of the fourteen counts?
>
> MR. CROCKETT. Yes, sir.
>
> THE COURT. Mr. King [Amos' attorney], do you desire to address any questions to the members of the jury?
>
> MR. KING. No, Your Honor.

Amos now asserts that the interrogation in requiring a juror to disclose his vote in open court on each count and in thereafter directing that the jury retire to reconsider its verdict coerced a verdict in violation of Rule 31(d), Fed.R. Crim.P. which, in pertinent part, reads:

> (d) Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

 This rule specifically grants the trial judge a measure of discretion in determining either to require the jury to deliberate further or to grant a mistrial if it appears that the verdict was not unanimous. *See* United States v. Brooks, 137 U.S.App.D.C. 147, 420 F. 2d 1350, 1353 (1969). In this case, Judge Williams directed that the jury retire for further deliberation after learning that juror Crockett did not concur in the finding of guilt on any of the counts. Whether that ruling constitutes error depends on whether it is likely that the proceedings conducted by the trial court coerced the juror in arriving at his final verdict. *Compare* United States v. Bendicks, 449 F.2d 313, 315 (5th Cir. 1971); Williams v. United States, 136 U.S.App.D.C. 158, 419 F.2d 740, 744–747 (1969) (en banc); United States v. Brooks, *supra* at 1351–1354 (verdicts sustained as not coerced), *with* United States v. Sexton, 456 F.2d 961, 964–967 (5th Cir. 1972); United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739, 741–742 (1970); Matthews v. United States, 252 A.2d 505, 506–507 (D.C. Ct.App.1969) (verdicts found to be coerced).[3]

3. Generally, in the cases upholding verdicts as not coerced, the trial courts have questioned the polled juror to resolve any questions and then returned the juries for further deliberations. In the cases finding verdicts to be coerced, the trial courts had demanded in-court categorical responses from jurors who expressed reservations or recal-

■ We need note a distinction between a case where the trial judge interrogates the jury to clarify the confusion engendered by a juror's response to a poll which is inconsistent with the foreman's announcement of the verdict, as in the present case, and one in which the court requires a jury to reveal its decision when no verdict has been returned, as in Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). In the latter circumstances, the court's actions will be deemed coercive. But in the former, Rule 31(d) gives the court some latitude in polling of the jury to clear up an apparent confusion. Williams v. United States, 419 F.2d at 746.

■ Moreover, in evaluating the trial court's polling procedure, since the trial judge is present on the scene, we must pay due deference to his views on whether the recalcitrant juror's ultimate acquiescence in the verdict came freely, without pressure from the court. United States v. Brooks, 420 F.2d at 1353; Jackson v. United States, 128 U.S.App. D.C. 214, 386 F.2d 641, 643 (1967).

■ Applying these principles, we hold that this record demonstrates that Judge Williams interrogated juror Crockett to dispel any confusion. When juror Crockett on the second interrogation, which was requested by Amos' counsel, indicated an apparent change of mind as to guilt on count four, Judge Williams promptly refused to receive the verdict and directed that the jury resume deliberations, adding this comment:

I hope you are able to arrive at a verdict. If you are well and good, if you are not well and good.

Additionally, after the jury returned its verdict, Judge Williams ascertained

from juror Crockett that he understood the import of the verdict and that he agreed with the guilty verdict on all counts.

■ We think it significant, too, that Amos' attorney voiced no objection to the court's procedures in polling the jury or questioning of juror Crockett. This lack of objection by counsel permits an inference that the procedures utilized did not appear coercive at the time. *See* United States v. Brooks, 420 F.2d at 1353–1354.[4]

In denying Amos' post-trial motion to arrest judgment or for a new trial, Judge Williams stated that "the inquiries were essentially neutral and not calculated to affect the juror's judgment." We find no error of law or fact in this determination and, accordingly, affirm this ruling.

## II.

## ALLEGED ERRORS DURING THE TRIAL

■■ Amos' contention that the trial court erred in admitting evidence of other crimes relating to income tax matters rests on evidence introduced showing that defendant had claimed false deductions for at least one taxpayer commencing as early as 1964, although the indictment covered the tax returns prepared for the years 1968 to 1971, and the Government's introduction of certain exhibits showed that Amos attempted to verify false deductions with false documentation. The trial court rejected this same contention noting that the questioned evidence bore on intent and was logically connected with proof of elements of the crime charged, citing United States v. Fidanzi, 411 F.2d 1361 (7th Cir.), cert. denied, 396 U.S. 929, 90 S.Ct. 265, 24 L.Ed.2d 227 (1969); United States v. Turner, 423 F.2d 481 (7th Cir.),

---

citrance when polled, instead of returning the juries for additional deliberations. *Cf.* Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F.2d 224, 225–226 (1942) (civil suit).

4. Amos' counsel made no objection to the questions asked by the trial court but, after

the jury had retired to further consider their verdict, did move for a mistrial at the suggestion of the trial court to protect the record. Counsel in agreeing to the court's suggestion added nothing to the record by way of specific grounds for the requested relief.

cert. denied, 398 U.S. 967, 90 S.Ct. 2183, 26 L.Ed.2d 552 (1970), and United States v. Edwards, 443 F.2d 1286 (8th Cir.), cert. denied, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 259 (1971). We agree that the Government's proof was proper. The admission of such evidence fell within the trial court's discretion.[5]

Amos also challenges certain instructions and comments to the jury. In particular, appellant directs an objection to the court's limitation in its explanation of charitable deductions under the Internal Revenue Code to amounts "actually paid during the taxable year by the taxpayer to religious, charitable, educational and similar non-profit organizations."

 While the instructions did not specifically incorporate such items as out-of-pocket expenses which taxpayer might have incurred, the instruction in a general way appropriately explained the law in the context of the case since taxpayers testified that Amos did not receive information from them justifying the charitable contributions listed in various returns. The failure to further explain this deduction in light of the record at best must be deemed harmless error.

Finally, during the reading of the instructions the trial court erroneously misread the text of his instructions, stating that:

> Several documents have been offered in this trial which the *defendant* contends are false and fraudulent. You are instructed that the defendant, Lucien V. Amos, was not charged with the submission of these documents and they are only allowed into this trial for purposes of showing the defendant's intent at the time he prepared the tax returns which are the subject matter of the indictment.

The italicized word should have read "Government."

Although the court apparently misspoke, we hold that the error must be deemed harmless. As Judge Williams aptly observed in his post-trial ruling on this issue:

> It is not reasonable to assume that anyone (after four days of testimony in this trial) would not understand that it was the Government's and not the defendant's contention that the documents were false and fraudulent. Any question raised by this minor misstatement was clarified by the balance of the instructions.

We agree.

Judgment affirmed.

---

5. In reviewing the transcript, we must note that the court reporter has failed to index the exhibits offered and received by designating the place in the transcript where any such exhibit was marked and where any such exhibit was either received or refused admission. This court finds it very difficult to review claims of error without such an index. Court reporters in fulfilling their duties to the court in preparing transcripts must properly index the materials contained therein including a listing of the exhibits as marked, received, or rejected.