UNITED STATES of America, Appellee

v.

John FIORILLA, Appellant at
No. 87–5445.

UNITED STATES of America, Appellee

v.

Mary FIORILLA, Appellant at
No. 87–5446.

Nos. 87–5445, 87–5446.

United States Court of Appeals,
Third Circuit.

Argued April 14, 1988.

Decided June 30, 1988.

Rehearing and Rehearing In Banc
Denied July 26, 1988.

Adolph J. Galluccio (argued), Browne &
Galluccio, Paterson, N.J., for appellant
John Fiorilla.

Jonathan L. Goldstein, Stephen M.
Greenberg (argued), Hellring Lindeman
Goldstein Siegal Stern & Greenberg, New-
ark, N.J., for appellant Mary Fiorilla.

Edna Ball Axelrod (argued), Samuel A.
Alito, Jr., Appeals Div., U.S. Attorney's
Office, Newark, N.J., for appellee.

Before HUTCHINSON, SCIRICA and
ROSENN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Defendant-appellants John and Mary
Fiorilla (the Fiorillas) appeal from judg-
ments of sentence imposed after a jury
found them guilty of violating 8 U.S.C.A.
§ 1324 (West Supp.1988), 18 U.S.C.A. § 371
(West 1966) and 18 U.S.C.A. § 1001 (West
1976).[1]  We have jurisdiction over this ap-
peal from a final order of the district court.
28 U.S.C.A. § 1291 (West Supp.1988).  Ap-
pellants contend that the district court
erred in failing to grant their request for a
new trial when a poll taken following the

---

1. 8 U.S.C.A. § 1324 makes unlawful bringing
aliens not duly admitted by an immigration
officer or not lawfully entitled to enter the Unit-
ed States into the United States and harboring
them.  18 U.S.C.A. § 371 makes unlawful a con-
spiracy to commit any offense against the Unit-
ed States.  18 U.S.C.A. § 1001 prohibits the
making of false statements or representations to
any department or agency of the United States.

announcement of the purportedly unanimous verdict revealed a dissident within the jury. The trial judge ordered the jurors to continue their deliberations. They did and returned unanimous verdicts. Because the trial judge properly determined that the inadvertent disclosure of the venire's division did not coerce the recalcitrant juror, we believe he had discretion to order the verdict recorded. On this record that discretion was not abused. We will therefore affirm the judgments of sentence.[2]

The Fiorillas had been indicted along with three co-defendants on one count of conspiracy to harbor illegal aliens, 18 U.S.C.A. § 371, and nine substantive counts of harboring illegal aliens, 18 U.S.C.A. § 2 and 8 U.S.C.A. § 1324. The Fiorillas were also charged with two counts of false statements to the United States Labor Department and the Immigration and Naturalization Service in violation of 18 U.S.C.A. §§ 2 and 1001. After the trial, the jury informed the court that it had reached a verdict, returned to the courtroom and delivered its decision. John and Mary Fiorilla were found guilty on all counts with which they had been charged under the jury foreman's original announcement of the collective verdict. Thomas Fiorilla, Frances Scullion and Charles Hirschkind were also on trial with appellants John and Mary Fiorilla for charges stemming from the employment of aliens at appellants' nursing homes. Thomas Fiorilla was found not guilty on counts one through four and guilty on counts five through thirteen. Frances Scullion was found guilty on count one and counts five through thirteen and not guilty on counts two through four. Charles Hirschkind was found not guilty on all counts. Counsel for John Fiorilla then asked to poll the jury.

The individual jurors were first asked whether they concurred in the verdict as it related to John Fiorilla. Jurors one through nine agreed with the reported verdict. With juror number ten, this colloquy ensued:

THE COURT: Mr. Fonseca, do you agree or disagree with the verdict against John Fiorilla as I have just reported it?

JUROR NO. 10: I disagree.

THE COURT: You disagree with the verdict as reported?

JUROR NO. 10: Yes.

THE COURT: Did I report it inaccurately?

JUROR NO. 10: Yes.

THE COURT: Let me reiterate what was stated here. As I told you, your verdict in this case had to be 12 nothing. Correct?

. . . .

In other words, the report of the jury here on this verdict sheet was that the jury had found Mr. John Fiorilla unanimously guilty on all counts with which he was charged. Now, what I am asking you is do you agree or disagree with that verdict as reported here?

Do you understand what I am saying?

JUROR NO. 10: Yes, I understand. Yes, to be honest, I have no peace in me.

Jt.App. at 1758–59. The trial court excused the other eleven jurors and then renewed his discussion with Mr. Fonseca:

THE COURT: Mr. Fonseca, I'd like to hear what you have to say or what you meant by that comment and we will take it from there. When you said you have no peace in you, could you amplify that for us, please?

JUROR NO. 10: Sure. When we were up there in the jury room discussing [sic] the defendants were guilty or not guilty, I gave my opinion and everybody gave their opinion and when I gave mine all of them started giving me their point of view and I kind of saw myself, you know, attacked, you know, and so I agreed. But—

*Id.* at 1759–60. At that point, the trial judge reread to Mr. Fonseca that portion of the charge to the jury referring to a juror's obligation to deliberate with a view to reaching an agreement, consistent with lan-

---

**2.** Appellants raise eight additional contentions, listed in the appendix, which we have fully considered and will reject without discussion in the opinion.

guage approved by this Court in *United States v. Fioravanti*, 412 F.2d 407 (3d Cir.), *cert. denied*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969). Once again, juror Fonseca reiterated his position that the verdict sheet did not reflect his view on the guilt or innocence of John Fiorilla.

All counsel then agreed with the trial court's suggestion that Mr. Fonseca be questioned on his position about the other defendants. So questioned, this juror expressed his disagreement with all of the jury's findings of guilt against Mary Fiorilla. He then voiced agreement with the findings exonerating Thomas Fiorilla and Frances Scullion but disagreed with all of the guilty findings against these last two defendants. On defendant Charles Hirschkind, juror Fonseca agreed with the determination of innocence on all counts. Since no discrepancy appeared as to Mr. Hirschkind, a verdict of acquittal was recorded as to him.

The trial judge then revealed his intention to continue the poll as to the remaining jurors. At this point, counsel advanced no objection to the trial court's proposal to interrogate the other members of the venire.[3] Jurors eleven and twelve indicated their agreement with the reported verdicts as to John Fiorilla. The eleven jurors then stated their approval of Mary Fiorilla's guilty verdicts. Similarly, the eleven voiced their assent in the guilty findings as to Thomas Fiorilla and Frances Scullion. Through the polling of the jurors in this manner, an eleven to one division on the guilty verdicts became apparent. The trial court temporarily excused the jury but ordered them to return for further deliberations the following morning.

The next morning, the trial judge informed counsel of an Eleventh Circuit decision, *United States v. Spitz*, 696 F.2d 916 (11th Cir.1983) (per curiam), which held that a trial judge may not continue a poll once a dissenter has emerged. Although the trial judge was not yet prepared to grant a mistrial on this basis, he sought to give all counsel the benefit of his research. In the meantime, he ordered the jury to continue its deliberations. After two days of additional deliberations, the jury returned a verdict finding John and Mary Fiorilla guilty on all counts but completely exonerating Thomas Fiorilla and Frances Scullion. A second poll of the jury showed no discrepancy between the reported collective verdicts and the jurors' individual votes.

■ In their post-trial motions the Fiorillas renewed their request for a mistrial because the trial judge continued the jury poll after juror number ten voiced disagreement with the initially reported collective verdict. After briefing and oral argument, the district court ruled that the jury poll did not warrant the granting of a new trial under the unique circumstances of this case. The appellants now renew their argument that the continued polling of the jury, following the dissent of one of its members, requires the granting of a new trial. In support, appellants cite the decision in *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). In that case, the Supreme Court held it is improper for a trial court to inquire into the numerical division of a jury. They also point to the opinion in *United States v. Spitz, supra,* in which the Eleventh Circuit extended the *Brasfield* rule to jury polls. We believe the trial judge has a limited discretion to determine whether the circumstances demonstrate a lack of coercion upon the initially dissenting member of the jury. We will therefore review the district court's order denying a mistrial for an abuse of that discretion. Since a lack of coercion is demonstrated by this record, we find no abuse of discretion.

---

**3.** Appellants point out that immediately following juror Fonseca's disclosure, the trial judge stated: "All objections are preserved." Jt.App. at 1760. This comment came at a point when the judge sought to converse with the lone juror without the distractions of counsel. Before the remaining jurors were brought back into the courtroom, the trial judge gave counsel ample opportunity to argue the problem and to raise any objections concerning the continued polling. It would be inappropriate to decide this case on waiver grounds. We note, however, counsel's failure to object contemporaneously and specifically to the polling of the other eleven jurors as evidence of an absence of a coercive atmosphere. *See infra* at 176.

In *Brasfield*, after "some" hours of deliberation, the trial judge inquired as to how the jury stood numerically. Without revealing which jurors favored conviction, the foreman disclosed that the jury stood nine to three. In reversing, Justice Stone stated:

> We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

272 U.S. at 450, 47 S.Ct. at 135–36. This Court has relied upon the *Brasfield* prohibition to condemn a trial judge's sending a note to the jury foreman to determine the jury's division. *Government of the Virgin Islands v. Romain,* 600 F.2d 435 (3d Cir. 1979).[4]

Neither *Brasfield* nor *Romain* was decided in the context of a jury poll. In addition, *Brasfield* was decided before the adoption of the Federal Rules of Criminal Procedure which expressly permit polling of the jury in a criminal case. Fed.R. Crim.P. 31(d). However, the Eleventh Circuit, in *Spitz,* held that the rule in *Brasfield* does extend to the polling of a jury pursuant to Fed.R.Crim.P. 31(d). *Spitz* involved a single defendant. Following the announcement of a guilty verdict, a juror voiced her disagreement. The trial court continued the polling. The appellate court, citing *Brasfield,* held that "the effect of what the court did in this instance, by continuing the poll for no reason at all, was to establish how the jury stood numerically. To do so was per se error." 696 F.2d at 917. To this ruling, the court carved an "exceptional circumstance" limitation to the reversal requirement. "An exceptional circumstance may arise when there is an apparent confusion on the juror's part that may be clarified by interrogation by the court...." *Id.* at 918 n. 1.[5]

At least two Courts of Appeals have chosen not to require *per se* reversal once a jury poll reveals an internal division of the jurors. In *Amos v. United States,* 496

**4.** Since *Brasfield* makes no mention of the due process clause or any other constitutional protection, other courts of appeals have rejected the contention that the *Brasfield* bar must be adhered to when reviewing state criminal proceedings on *habeas corpus. E.g., Williams v. Parke,* 741 F.2d 847 (6th Cir.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1399, 84 L.Ed.2d 787 (1985); *Locks v. Sumner,* 703 F.2d 403 (9th Cir.), *cert. denied,* 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983); *Cornell v. Iowa,* 628 F.2d 1044 (8th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981); *Ellis v. Reed,* 596 F.2d 1195 (4th Cir.), *cert. denied,* 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979). *See also Lowenfield v. Phelps,* ____ U.S. ____, 108 S.Ct. 546, 552 n. 3, 98 L.Ed.2d 568 (1988).

**5.** We note that this Court, in *United States v. Aimone,* 715 F.2d 822, 833 (3d Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 883 (1984), cited *Spitz* for the proposition that to continue polling after a juror has dissented is

erroneous. Since that particular issue was not under scrutiny in *Aimone,* the reference to the *Spitz* rule is a *dictum* which we choose not to follow. Additionally, we are aware of a passage within the Supreme Court's recent decision in *Lowenfield v. Phelps, supra,* wherein Chief Justice Rehnquist stated: "Although the decision in *Brasfield* was an exercise of this Court's supervisory powers, it is nonetheless instructive as to the potential dangers of jury polling." 108 S.Ct. at 552 (footnote omitted). We do not believe that this sentence must be interpreted to reflect the Supreme Court's extension of *Brasfield* to the jury polling context. The Supreme Court has never expressly considered the issue. *Lowenfield* dealt only with a state trial judge's inquiry of a jury as to whether continued deliberations would be helpful in obtaining a verdict. The poll sought to determine whether the members of the jury thought that a hung jury was inevitable. It was not designed to ascertain the numerical division of the jurors on the question of the penalty to be imposed in a capital case.

F.2d 1269 (8th Cir.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 140 (1974), the Eighth Circuit distinguished *Brasfield* and held that Fed.R.Crim.P. 31(d) [6] grants a trial court conducting a jury poll a certain measure of discretion in clearing up confusion once a verdict is returned. The opinion stresses that "since the trial judge is present on the scene, we must pay due deference to his views on whether the recalcitrant juror's ultimate acquiescence in the verdict came freely, without pressure from the court." *Amos,* 496 F.2d at 1273. Similarly, in *United States v. Brooks,* 420 F.2d 1350 (D.C.Cir.1969), a jury poll revealed two jurors who did not fully agree to the guilty verdicts announced by the forewoman in a multi-count criminal prosecution. Defense counsel requested that the remaining jurors be polled. Questioning of the two recalcitrant jurors led to one juror's agreeing to the guilty verdict on the controverted count. The court ordered the jury to deliberate further. Following twenty minutes of additional deliberations, the jury found the defendant guilty on that count upon which, because of the jury's division, the court had not accepted a verdict. The District of Columbia Circuit also noted that Fed.R.Crim.P. 31(d) invests the trial court with discretion and that such discretion must be accorded proper deference by a reviewing court. *Brooks,* 420 F.2d at 1353. The court also cited the fact that defense counsel requested the poll and failed to object to questioning of the jurors as significant factors in upholding the judgment of sentence. *Id.* at 1354. Finally, the court emphasizes that, unlike the trial judge's inquiry in *Brasfield,* jury polling is both a necessary and useful device for preserving a defendant's right to a unanimous verdict. *Id.*

*Brasfield* was decided on supervisory rather than constitutional grounds in 1926, a time before any independent federal rules governing criminal procedure had been adopted. *Cf. United States v. Noah,* 594 F.2d 1303, 1305 (9th Cir.1979) (per curiam)

(Kilkenny, J., dissenting) (questions continuing vitality of *Brasfield* rule after enactment of Federal Rules of Criminal Procedure incorporating the harmless error rule). The decisions in the *Amos* and *Brooks* cases seem to us to be consistent with the rules adopted since *Brasfield* and to represent the better approach to an inadvertent disclosure of a jury's division through polling. Accordingly, we reject the *Spitz* view that the Supreme Court's *Brasfield* holding requires *per se* reversal in the context of a jury poll in favor of a rule vesting discretion in the trial court. It cannot be gainsaid that a trial judge is in the best position to weigh the circumstances peculiar to each trial and determine whether a poll coerced a juror into acquiescing in the majority's demands. This approach is not inconsistent with our holding in *United States v. Aimone,* 715 F.2d 822 (3d Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984). In *Aimone,* a juror initially expressed disagreement during a poll. The trial judge ordered that deliberations continue without further polling. A unanimous guilty verdict was then recorded. We held that the court properly ordered further deliberations despite a motion for a mistrial. We emphasized that an appellate court must defer to the judgment of the trial judge in such situations, particularly in lengthy trials. *Id.* at 832.

Here, the trial court carefully considered and rejected appellants' request for a new trial. In so ruling, the court referred to a number of factors surrounding the continuation of the jury poll after Mr. Fonseca's dissent. They include counsels' failure to voice a specific and contemporaneous objection to the polling, which demonstrates to some degree the absence of a coercive atmosphere. Upon learning of the dissidence, the trial judge dismissed the jurors for the day. This removed Mr. Fonseca from the immediate "attacks" of his peers. Before deliberations resumed the next day,

---

**6.** Fed.R.Crim.P. 31(d) reads as follows:

(d) Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

the trial judge delivered a cautionary instruction asking the jurors to carefully weigh and consider the views of their fellow jurors. Most important was the trial court's reliance on the deliberations having continued for an additional two days before the jury returned unanimous guilty verdicts against the appellants. The district court concluded that this lapse of time before the return of guilty verdicts demonstrated that the lone dissenting juror was not coerced by the poll to capitulate to the views of the majority. *Cf. Brooks*, 420 F.2d at 1353–54 (jury's returning verdict after twenty minutes of deliberations after poll upheld). Although Mr. Fonseca initially stood as the lone vote for acquittal on Thomas Fiorilla's and Frances Scullion's verdicts, the jury ultimately acquitted them. His view on these two defendants in the end carried the day. Thus, it was plain to the district judge, as it is to us, that Mr. Fonseca was not afraid to stand up for his convictions and that his peers took his opinions seriously during their two days of further deliberations.

We also accept as appropriate the district court's assertion that it was attempting to take partial verdicts wherever possible in a relatively complex multi-count, multi-defendant criminal prosecution. Appellate courts should be willing to allow trial judges discretion to deal with the exigencies that are bound to arise in today's modern multi-party litigation. While it may generally be preferable to immediately conclude a poll and return the jury for further deliberations once a dissent is noted, we find no abuse of discretion in the course taken here.

Accordingly, the judgments of the district court will be affirmed in all respects.

## APPENDIX

Listing of Contentions Raised and Rejected but not Discussed in Opinion

A. Contentions of Both John and Mary Fiorilla:

1. The district court erred in allowing the testimony of Immigration and Naturalization Service Agent John Lonergan.

2. The district court erred in admitting the arrest book into evidence.

3. The district court erred in refusing to disclose the identity of Immigration and Naturalization Service Agent Michael Bassanta.

4. The district court erred in failing to unseal the transcript of the *ex parte* discussion with the prosecutor.

B. Contention of John Fiorilla:

5. The district court erred in failing to grant John Fiorilla's motions for judgments of acquittal.

C. Contentions of Mary Fiorilla:

6. The district court erred in allowing into evidence inflammatory and prejudicial evidence.

7. The evidence was insufficient to support Mary Fiorilla's convictions.

8. The district court's jury instructions were erroneous.