UNITED STATES of America, Appellee,

v.

Guiseppe GAMBINO, Francesco Gambino, Lorenzo Mannino, Matto Romano, Salvatore LoBuglio, Salvatore Rina, Guiseppe D'Amico, Salvatore D'Amico, Francesco Cipriano, Pietro Candela, Salvatore Candela, Francesco Inzerillo, Joseph LaRosa, Paolo D'Amico, Rocco Launi, Fabrizio Tesi, Vittorio Barletta, Carmelo Guarnera, Sasha (LNU), Giovanni Zarbano, Rosario Naimo, Emanuele Adamita and Giovanni Gambino, Defendants,

Salvatore LoBuglio and Salvatore D'Amico, Defendants–Appellants.

Nos. 149, 150, Dockets 91–1153, 91–1231.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1991.

Decided Dec. 10, 1991.

Andrew C. McCarthy, Frances M. Fragos and James B. Comey, Asst. U.S. Attys., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., of counsel), for appellee.

Russell M. Leisner, Forest Hills, N.Y., and Martin G. Goldberg, Franklin Square, N.Y., for defendants-appellants.

Before MINER and MAHONEY, Circuit Judges, and MISHLER, District Judge.*

MISHLER, District Judge:

Salvatore LoBuglio ("LoBuglio") and Salvatore D'Amico ("D'Amico") appeal from judgments of conviction for violations of the federal narcotics laws after a jury trial in the United States District Court for the Southern District of New York.

A superseding indictment was returned on January 3, 1990, charging LoBuglio, D'Amico and fourteen co-defendants with conspiracy to import multi-kilograms of

* Honorable Jacob Mishler, Senior District Judge of the United States District Court for the East- ern District of New York, sitting by designation.

heroin and cocaine in violation of 21 U.S.C. § 963 (Count One), conspiracy to distribute the imported narcotic drugs in violation of 21 U.S.C. § 846 (Count Two), and with distributing one-quarter kilogram of heroin on March 15, 1988, in violation of 21 U.S.C. § 841(a)(1) (Count Five).

The charges against LoBuglio, D'Amico, and co-defendants Giuseppe D'Amico, Francesco Cipriano, Salvatore Candela and Carmelo Guarnera were severed. A trial on Counts One, Two and Five of the indictment of these defendants started on May 7, 1990. On July 24, 1990, the jury returned a verdict finding LoBuglio and D'Amico guilty on Counts One, Two and Five, and acquitting the co-defendants on all charges.[1]

Appellants appeal their convictions, contending, *inter alia*, that the district court: (1) deprived the appellants of a fair trial when it continued to poll the jury after it learned that the verdict was not unanimous; (2) improperly removed a juror during the trial; (3) erred in allowing the government to cross-examine LoBuglio by repeatedly asking him about his relationship with friends and family who were part of the "Mafia."

## DISCUSSION
### POLLING THE JURY

■ We first address the issue raised in polling the jury. After five days of deliberation, the foreperson sent a note to the court indicating that the jury had arrived at a verdict. Judge Leisure inquired of the foreperson as to whether the jury agreed upon a verdict, to which the foreperson responded, "Yes we have." The verdict form signed by the foreperson showed that the jury had found LoBuglio and D'Amico guilty on all counts, and the other four co-defendants not guilty on all counts. Counsel for LoBuglio and D'Amico requested that the jury be polled. The following exchange took place:

THE DEPUTY CLERK: Mr. Foreman, jurors, you have heard your verdict as it stands recorded. Is that your verdict, Juror No. 1?

JUROR 1: Yes.

THE DEPUTY CLERK: Is that your verdict, Juror No. 2?

JUROR 2: Mine, no, not—I disagree with some of the things.

MR. EVSEROFF (LoBuglio's Attorney): I move for a mistrial, if it pleases the court.

MR. GOLDBERG (D'Amico's Attorney): I join that.

THE COURT: I am going to have to ask the jury to go back and continue its deliberations.

MR. EVSEROFF: If your Honor please, will you rule on my application?

THE COURT: I deny your application for a mistrial.

MR. EVSEROFF: Respectfully except.

THE COURT: I will ask the jury to go back and continue its deliberation. Shall we continue the polling of the jury though? I think I might see what the other members of the jury have to say. [Counsel for LoBuglio and D'Amico made no objection].

DEPUTY CLERK: Juror No. 3, is that your verdict?

JUROR 3: Yes.

DEPUTY CLERK: Juror No. 4, is that your verdict?

JUROR 4: Yes.

DEPUTY CLERK: Juror No. 5, is that your verdict?

JUROR 5: Yes.

DEPUTY CLERK: Juror No. 6, is that your verdict?

JUROR 6: Yes.

DEPUTY CLERK: Juror No. 7, is that your verdict?

JUROR 7: No, not guilty.

---

1. LoBuglio was sentenced to a term of imprisonment of 405 months, and a term of supervised release of five years, a fine of $150,000 and an assessment under 18 U.S.C. § 3013 of $150. D'Amico was sentenced to a term of imprisonment of 235 months and a term of supervised release of five years, a fine of $100,000 and an assessment under 18 U.S.C. § 3013 of $150.

MR. EVSEROFF: If your Honor please, I respectfully renew my application based on two jurors saying that that's not their verdict and Juror No. 8 [evidently referring to Juror No. 7] saying "not guilty." I move for a mistrial at this time.

\*   \*   \*   \*   \*   \*

THE COURT: We have a verdict signed by the foreperson. They have had five days of deliberations. I have the verdict. I am going to ask them to continue the deliberations. But let us continue the polling.

DEPUTY CLERK: Juror No. 8, is that your verdict?

JUROR 8: Yes.

DEPUTY CLERK: Juror No. 9, is that your verdict?

JUROR 9: Yes.

DEPUTY CLERK: Juror No. 10, is that your verdict?

JUROR 10: Yes.

DEPUTY CLERK: Juror No. 11, is that your verdict?

JUROR 11: Yes.

DEPUTY CLERK: Juror No. 12, is that your verdict?

JUROR 12: Yes.

THE COURT: All right. We'll ask you to continue your deliberations.

(Jury excused)

\*   \*   \*   \*   \*   \*

MR. GEDULDIG (Giuseppe D'Amico's attorney): Judge, if we could be heard for a second. There are several of us who do not join in Mr. Evseroff's application.

The attorneys for Giuseppe D'Amico, Cipriano, Candela and Guarnera asked Judge Leisure to inquire of the jury as to whether the jury had arrived at a unanimous verdict on the charges against them. Judge Leisure directed the return of the jury to the courtroom. The jury found the said defendants "not guilty" on all charges.

The judge then instructed the jury to review the jury instructions and continue its deliberation as to appellants LoBuglio and D'Amico. Two hours later, the jury returned a verdict and found appellants LoBuglio and D'Amico guilty on all counts.

Another poll of the jury revealed that the verdict was unanimous.

Though this Circuit has not expressly ruled on the question, the weight of authority suggests that when the trial judge continues to poll the jury after one juror disagrees with the verdict, reversible error occurs only when it is apparent that the judge coerced the jurors into prematurely rendering a decision, and not merely because the judge continued to poll the jury. *United States v. Fiorilla,* 850 F.2d 172, 174 (3d Cir.), *cert. denied,* 488 U.S. 966, 109 S.Ct. 492, 102 L.Ed.2d 529 (1988); *Amos v. United States,* 496 F.2d 1269, 1272 (8th Cir.1974); *United States v. Brooks,* 420 F.2d 1350, 1354 (D.C.Cir.1969).

Rule 31(d) of the Federal Rules of Criminal Procedure provides that "[i]f upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." Courts have interpreted Rule 31(d) as leaving the method of conducting the jury poll to the judge's discretion. *United States v. Hernandez–Garcia,* 901 F.2d 875, 877, 878 (10th Cir.1990) (citation omitted); *Fiorilla,* at 177; *Amos* at 1272; *Bruce v. Chestnut Farms–Chevy Chase Dairy,* 126 F.2d 224, 225–26 (D.C.Cir.1942).

Since Rule 31(d) entrusts the trial judge with a measure of discretion, "the reasonable exercise of this discretion should be accorded proper deference by a reviewing court." *Brooks,* at 1353; *see also Fiorilla, supra; Amos,* at 1273.

■ When appellate courts consider the coercive effects of a trial judge's statements to the jury, such assertions must be evaluated "in ... context and under all the circumstances." *United States v. Dorsey,* 865 F.2d 1275 (D.C.Cir.1989), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 603 (1989) (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965)).

Other courts have suggested factors to be applied in determining whether the method of polling is coercive: (1) The absence of counsel's objection to the polling. *Fiorilla,* at 176 ("[c]ounsels' failure to

voice a specific contemporaneous objection to the polling ... demonstrates to some degree the absence of a coercive atmosphere."); *see also Amos*, at 1273, *Brooks*, at 1354; (2) Whether the trial judge again gave the jury a cautionary instruction before excusing the jury for further deliberation. *Fiorilla*, at 177. (The possibility of coercion is significantly lessened when the trial judge "deliver[s]" a cautionary instruction asking the jurors to carefully weigh and consider the view of their fellow jurors ..." before the jurors are sent back to the jury room to continue their deliberation.); (3) The deliberation time after being excused for further deliberation. In *Amos*, at 1272 and *Brooks*, at 1353, the juries returned verdicts after approximately twenty minutes of additional deliberation.

■ In Appellants' case, counsel failed to raise a contemporaneous objection to the polling procedure, the trial judge reminded the jury to review the jury instructions before continuing their deliberation and the guilty verdicts were rendered in two hours. We find that the judge's procedure was not coercive.

The holding in *United States v. Spitz*, 696 F.2d 916 (11th Cir.1983) (citing *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926)), cited by appellants, is not to the contrary.[2] In *Spitz*, after one juror dissented from the verdict, the judge continued to poll the jury until he realized that there was only one juror who had dissented. The trial judge then directed the dissenting juror to stand and ordered her once again to repeat in open court that she disagreed with the verdict. While the juror was still standing, the judge proceeded to give an *Allen* charge and then excused the jury to return to its deliberation. The court found that the trial judge unnecessarily interfered with the deliberative process and held that *per se* reversible error occurred when the judge continued the jury poll. *Spitz*, at 917.

■ The purpose of a jury poll "is to test the uncoerced unanimity of the verdict

by requiring 'each juror to answer for himself, thus creating individual responsibility, eliminating any uncertainty as to the verdict announced by the foreman.'" *United States v. Shepherd*, 576 F.2d 719, 725 (7th Cir.1978), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978) (quoting *United States v. Mathis*, 535 F.2d 1303, 1307 (D.C.Cir.1976)) (emphasis added). One obvious consequence of this process is that the numerical division of the jurors will be revealed in the courtroom. The purpose of the poll is not to interfere with the deliberative process, but rather to insure that the defendant was convicted by a unanimous verdict. *Humphries v. District of Columbia*, 174 U.S. 190, 194, 19 S.Ct. 637, 638–639, 43 L.Ed. 944 (1899). Whether the method employed in conducting a jury poll is coercive must be evaluated on the facts and circumstances of the particular case and not simply because the trial judge continued to poll the jury after a juror dissented from the reported verdict.

We find the jury poll conducted by Judge Leisure after juror two indicated disagreement with the verdict and the continued polling after juror seven responded "not guilty" was within the trial judge's discretion.

### *REMOVAL OF A JUROR*

■ Appellants next argue that they were deprived of a fair trial when Judge Leisure removed a juror, prior to the jury's deliberation. We find this claim to be without merit.

■ Rule 24(c) of the Federal Rules of Criminal Procedure authorizes a trial judge to "replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Discretion, again, is vested in the district court to remove a juror when the facts reveal that the juror's ability to perform her duties are impaired. *United States v. Floyd*, 496 F.2d 982, 990 (2d Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664

---

**2.** *Brasfield* held that it was reversible error for a trial judge to send a note to the jury during

deliberation requesting the jury to reveal their numerical division.

(1974). *See also United States v. Corsino,* 812 F.2d 26, 33 (1st Cir.1987); *United States v. Fajardo,* 787 F.2d 1523 (11th Cir. 1986).

■ "Th[e] substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." *Floyd, supra.* A reviewing court should not disturb the trial judge's exercise of discretion in dismissing a juror unless there is a "bias or prejudice to the defendant." *United States v. Smith,* 550 F.2d 277, 285 (5th Cir.), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977).

In appellants' case, Judge Leisure dismissed juror 3 because she arrived late on two separate occasions, which caused the trial to be delayed for more than two hours. The judge also observed that the juror was sleeping during the trial, and commented to the deputy clerk that the case was "over her head." Juror 3 also requested a meeting with the judge. Judge Leisure met with the juror, *in camera.* Counsel did not object.

After this meeting, Judge Leisure excused the juror, based on the juror's attitude, demeanor and pending family commitments which may have interfered with her presence at the trial. He also considered her inability to perform her duties as a juror. No prejudice is shown.

*CROSS–EXAMINATION OF LoBUGLIO*

■ Appellants next maintain that the government improperly cross-examined LoBuglio by asking him about his relationship with several individuals who were either narcotics traffickers or Mafia members. We find that LoBuglio's direct testimony "opened the door" to the government's line of questioning. *United States v. Garcia,* 936 F.2d 648, 654 (2d Cir.1991).

LoBuglio testified on direct examination that financial distress led him to D'Amico for assistance; that he was involved in drug trafficking only because he believed that he was participating in a scheme to sell non-narcotic drugs to purchasers who believed they were buying narcotics.

Although LoBuglio admitted that he offered to sell these drugs on many different occasions, he claims he did so only as part of this thespian adventure. All of his boasting, that he was a member of a major drug syndicate, or that he had connections with powerful Mafia figures, were all part of a grand hoax to defraud the drug purchasers. LoBuglio testified that he had no drug connections, never did business with anyone in the Mafia and did not personally know anyone in the Mafia.

On cross-examination, the government introduced evidence of LoBuglio's connection with narcotics traffickers and Mafia members for the purpose of contradicting LoBuglio's testimony. The government did not randomly ask LoBuglio questions about unconnected narcotics traffickers simply to taint his credibility by association. Rather, the government directed its inquiries to individuals who were in some way connected to LoBuglio. These individuals were either mentioned by LoBuglio on direct examination, surfaced on surveillance tape recordings where LoBuglio boasted about his narcotics connections, or were names of Mafia members and drug dealers found in LoBuglio's address book.

"[W]here a defendant testifies on direct examination regarding a specific fact, the prosecution may prove on cross-examination 'that the defendant lied as to that fact.'" *United States v. Garcia,* 936 F.2d 648, 653 (2d Cir.1991) (quoting *United States v. Garcia,* 900 F.2d 571, 575 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 169, 112 L.Ed.2d 133 (1990)) (emphasis in original); *see also United States v. Bufalino,* 683 F.2d 639, 647 (2d Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983); *United States v. Benedetto,* 571 F.2d 1246, 1250 (2d Cir.1978).

In this case, LoBuglio attempted to explain his participation in the narcotics sale by testifying that he believed that only phony drugs were being sold and that he was lying when he repeatedly boasted of his drug connections. The cross-examination inquired about his actual connections with narcotics traffickers for the purpose of demonstrating that LoBuglio's story

was a fabrication. Under these circumstances, the judge did not abuse his discretion by allowing the cross-examination.

We have considered appellants' other claims and find them to be without merit.

Affirmed.