**Commonwealth of the
Northern Mariana Islands,
Plaintiff/Appellee,
v.
Francisco H. Ramangmau,
Defendant/Appellant.
Appeal No. 93-040
Traffic Case No. 93-1284
January 24, 1995**

---

Submitted on Briefs November 2, 1994

Counsel for appellant: Brien Sers Nicholas, Saipan.

Counsel for appellee: Cheryl M. Gill, Assistant Attorney General, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

VILLAGOMEZ, Justice:

Francisco H. Ramangmau appeals his convictions for vehicular homicide and reckless driving. A jury found him guilty of vehicular homicide, and the trial judge found him guilty of reckless driving.

We have jurisdiction over this appeal pursuant to 1 CMC § 3102(a). We affirm.

## ISSUES

Ramangmau raises six issues for our review:

1. Whether, under the totality of the circumstances, the trial court erred when it continued to poll the jury after a lack of unanimity among the jurors was revealed;

2. Whether Ramangmau was denied his right to a unanimous jury verdict and a fair trial because of the duplicitous nature of Count I, and by the trial court's failure to give a specific unanimity instruction;

3. Whether the trial court erred in denying Ramangmau's motion to suppress evidence as to statements he made at the scene of the accident and later at the Department of Public Safety ("DPS") headquarters;

4. Whether the court erred in denying Ramangmau's motion in limine to exclude evidence as to how he

was driving approximately one to one-and-one-half miles before the accident;

5. Whether the trial court erred in denying Ramangmau's motion for a judgment of acquittal after the government rested its case in chief; and

6. Whether the trial court erroneously instructed the jury as to the essential elements of the offense of vehicular homicide under 9 CMC § 7110.

## FACTUAL AND PROCEDURAL BACKGROUND

During the afternoon of April 18, 1993, Ramangmau, while driving south on Beach Road in Saipan, hit and killed a bicyclist who was riding north on the bike path immediately adjacent to the southbound lane.

DPS officers arrived to investigate the accident. They spoke to Ramangmau as well as other witnesses who were present at the scene of the accident. The officers asked Ramangmau for his driver's license and car registration, and whether he was the driver of the car. The officers directed Ramangmau to stand away from the scene so that they could secure it.

Ramangmau stated that he was the driver and moved away as requested. DPS officers questioned him about the accident. He answered the questions asked, but did not volunteer any information.

On two separate occasions at the scene, Ramangmau told Officer Baubauta and Captain D.R. Sablan that he wanted to speak with his father.[1] Captain Sablan drove Ramangmau to DPS about an hour after the accident, administered *Miranda* warnings to him, and again questioned him. From the time Ramangmau left the scene in the police car to the time his interview was completed at DPS, Ramangmau did not repeat his request to see his father. Ramangmau was not placed under formal arrest at any time on the day of the accident.

The government filed an information against Ramangmau on April 19, 1993. Count I (vehicular homicide) charged Ramangmau, under 9 CMC § 7110[2], with unlawfully causing the death of a bicyclist while violating 9 CMC §§ 5251 (speeding), 5311 (passing in bicycle lane), and 7104 (reckless driving). Count II separately charged Ramangmau with reckless driving in violation of 9 CMC § 7104(a).

Ramangmau moved to suppress the statements that he made to police officers at the scene of the accident and at DPS, both of which had been reduced to writing. The court denied the motion.

Ramangmau also made a motion in limine to exclude evidence as to the manner in which he was driving approximately one to one-and-one-half miles from the scene of the accident. The court denied this motion, as well.

After the government rested its case in chief, Ramangmau moved for a judgment of acquittal, pursuant to Com. R. Crim. P. 29(a), with respect to the reckless driving charge and that part of the vehicular homicide charge that relied on the underlying offense of reckless driving. The court denied both motions.

Ramangmau then presented evidence in his behalf, but did not renew the motions for acquittal at the close of all the evidence. Ramangmau subsequently filed post-verdict motions for acquittal, arrest of judgment, and a new trial under Com. R. Crim. P. 29(c), 34, and 33, respectively. The court denied all three motions.

After deliberation, the jury returned to announce its verdict. Ramangmau requested a poll of each juror. Jurors 1 through 4 stated that their verdict was "guilty." Juror 5 said "no." The court then polled the last juror, 6, who said "yes." At that point, the court sent the jury back to the jury deliberation room. Ramangmau then moved unsuccessfully for a mistrial. The court called the jury out again, repeated the general unanimity instruction, and sent them back to deliberate further. Immediately thereafter, the court ordered deliberation to stop because Ramangmau had requested an additional instruction about the need for an individual opinion from each juror. A short time later, the court released the jury for dinner.

When court proceedings resumed after dinner, the court denied Ramangmau's renewed motion for a mistrial, gave additional jury instruction pursuant to Ramangmau's request, and immediately called a recess for the weekend. The following Monday, the judge bifurcated the single verdict form into two forms and re-instructed the jury.

The jury then deliberated for two hours and thereafter returned a unanimous verdict of guilty on the vehicular homicide count based on the underlying charges of speeding and reckless driving. The court separately found Ramangmau guilty of reckless driving, a misdemeanor, as charged in Count II.

---

[1] Ramangmau was not a minor at the time of the accident.

[2] This provision provides, in relevant part:

> Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any law applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when the violation is the proximate cause of the death.

9 CMC § 7110(a).

Ramangmau was sentenced to ten years imprisonment for vehicular homicide and six months imprisonment for reckless driving, both sentences to run concurrently. This appeal followed.

## ANALYSIS

### I. The Polling of the Jury

█ The propriety of the polling of the jury under Com. R. Crim. P. 31(d) is reviewed for abuse of discretion.[3]

█ We disagree with Ramangmau's contention that per se error occurs if the trial judge continues to poll the jury, under Com. R. Crim. P. 31(d)[4], as soon as one juror disagrees with the verdict. Com. R. Crim. P. 31(d) authorizes the trial judge to discharge the jury or order it to retire for additional deliberations if a poll reveals a lack of unanimity. The court does not abuse its discretion, however, merely by continuing to poll the jury after one juror dissents. Reversible error occurs only when it is apparent that the trial judge has coerced the jurors into prematurely rendering a verdict.[5]

█ The following factors are considered, applying a totality of circumstances test, to assess whether the method of polling is coercive: (1) whether counsel objected to the polling, and did so specifically and contemporaneously; (2) whether the court repeated a cautionary instruction to "carefully weigh and consider the view of their fellow jurors"[6] before sending the jury to deliberate further; and (3) the length of time the jury deliberated after being sent for further deliberation.[7] We are not persuaded that the trial court coerced the jury into prematurely reaching a verdict in the present case.

█ It was Ramangmau who requested that the jury be polled. He did not object to further polling after Juror 5 voiced his dissent. The court did not interrogate the dissenting juror or any other member of the panel. Having completed the poll, the court immediately ordered the jury to retire to the jury room.

The court then re-instructed the jurors[8] and ordered them to deliberate further. At this point, Ramangmau objected and the court ordered the jury to halt deliberation. At Ramangmau's request, and before deliberations resumed, the court gave the jury a cautionary instruction, reminding each juror that he or she had to reach an individual opinion and decide the case independently, after discussing the evidence and the instructions with the other jurors.[9]

After the poll, which occurred on Friday, the jurors remained together for approximately two-and-one-half hours, after which they were excused for the weekend. On Monday, the jurors resumed their deliberations and reached a unanimous verdict within two hours.

In summary, the record shows that a coercive atmosphere did not exist during the jury poll or subsequent jury deliberations. Defense counsel did not object immediately and specifically to the polling of Juror 6, the court gave a series of cautionary instructions prior to the

---

[3] See United States v. Brooks, 420 F.2d 1350, 1353 (D.C. Cir. 1969) (trial judge has limited discretion "in assessing the impact of a dissenting vote during a jury poll [conducted pursuant to Fed. R. Crim. P. 31(d)], and the reasonable exercise of this discretion should be accorded proper deference by a reviewing court"). We find interpretations of the Federal Rules of Criminal Procedure instructive, as the Commonwealth Rules of Criminal Procedure are patterned after the federal rules. See, e.g., Commonwealth v. Martinez, 4 N.M.I. 18, 20 (1993).

[4] Pursuant to this rule,

When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

Com. R. Crim. P. 31(d).

[5] See United States v. Gambino, 951 F.2d 498, 501 (2d Cir. 1991), cert. denied sub nom.. D'Amico v. United States, ___ U.S. ___, 112 S. Ct. 1962, 118 L. Ed. 2d 563 (1992) (general rule is that a trial judge does not commit per se error by continuing to poll a jury, pursuant to Fed. R. Crim. P. 31(d), after one juror voices dissent with the verdict).

---

[6] Id., 951 F.2d at 502 (internal quotation marks and citation omitted).

[7] Id., 951 F.2d at 501-02.

[8] The court said, in relevant part:

You shall now retire and select one of your number to act as a foreperson. He or she will decide [sic] over your deliberations. In order to reach a verdict, all six jurors must agree to the decision. As soon as all of you have agreed upon verdicts, so that when polled, each may state truthfully that the verdict expressed his or her vote, have it dated and signed . . . .

Transcript of Proceedings at 1111.

[9] See id. at 1125-26.

resumption of deliberations on Monday, and the jurors spent little time reaching their final verdict.

## II. Duplicity of Indictment and Failure to Give Specific Unanimity Instruction

Ramangmau argues that Count I of the information was duplicitous and that this, combined with the trial court's failure to give specific unanimity instructions as to vehicular homicide and each predicate offense, confused the jury and violated his right to a unanimous verdict. Count I, charging Ramangmau with vehicular homicide, included two predicate offenses considered by the jury: speeding and reckless driving. Therefore, Ramangmau asserts, Count I was duplicitous.

Ramangmau further argues that while all of the jurors may have found him guilty of vehicular homicide, this finding could have been based on some jurors' belief that he was guilty of speeding, and other jurors' belief that he was guilty of reckless driving. Therefore, Ramangmau concludes, his right to a unanimous verdict was violated. Our analysis reveals otherwise.

█ Whether a criminal count is duplicitous is a question of law which we review de novo.[10] The government contends, though, that Ramangmau failed to preserve the duplicity issue for review, because he failed to challenge the information on this ground prior to trial.

█ Objections to the *form* of an information must be made prior to trial. Com. R. Crim. P. 12(b)(1). Ramangmau failed to raise his duplicity objection prior to trial and, therefore, waives the issue on appeal.[11] The issue of unanimity, however, involves Ramangmau's substantive right to a unanimous verdict under Com. R. Crim. P. 31(a), which provides, in relevant part, "[t]he verdict shall be unanimous."[12] Courts interpreting Fed. R. Crim. P. 31(a), the counterpart to our rule, have determined this to be an "'unequiv-ocal command'"[13] that precludes even express waiver.[14] Therefore, Ramangmau's failure to challenge the information prior to trial does not foreclose our review of the jury unanimity question.

█ With respect to the specific unanimity instructions, Ramangmau participated in the court's formulation of the instructions that were given. Ramangmau did not object to the instructions given and did not proffer the alternative instructions which he now alleges the court erred in failing to give. Our review, therefore, is for plain error.[15]

█ The information charged Ramangmau with vehicular homicide, one underlying element of which, in this case, was the commission of any of three materially distinct traffic offenses: speeding, reckless driving, and passing in the bicycle lane.[16] The court gave a general unanimity instruction to the jury. This general instruction on unanimity would not have been sufficient had the court not augmented the instruction[17] with special interrogatories in the verdict form.

The single verdict form initially given the jury contains interrogatories about Ramangmau's culpability as to the charges of speeding, reckless driving and vehicular homicide.[18] When the jury first reached a purportedly unanimous verdict and polling revealed that the jurors' decision was not, in fact, unanimous, the trial court divided the single verdict form into two parts. One part contained the questions of whether Ramangmau committed the offense of speeding, and, if so, whether

---

[13] *United States v. Lopez*, 581 F.2d 1338, 1341 n.2 (9th Cir. 1978) (quoting *United States v. Scalzitti*, 578 F.2d 507, 512 (3d Cir. 1978)).

[14] *See, e.g., Lopez*, 581 F.2d at 1340 ("Without reaching the constitutional implications of the question, we hold that jury unanimity required by [Fed. R. Crim. P.] 31 cannot be waived by the defendant").

[15] *See United States v. Payseno*, 782 F.2d 832, 834 (9th Cir. 1986).

[16] The government properly used the conjunctive word "and" rather than "or" in enumerating the three predicate offenses. Had "or" been used, Ramangmau would not have known for which of the three offenses to prepare his defense. *See* 1 Charles A. Wright, FEDERAL PRACTICE AND PROCEDURE § 125 (2d ed. 1982) (hereinafter "Wright").

[17] *See United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983).

[18] After its case-in-chief, the government dismissed the predicate offense of passing in the bicycle lane as a basis for Count I.

---

[10] *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988).

[11] *See id.*

[12] Com. R. Crim. P. 31(a).

such speeding was the proximate cause of the bicyclist's death, and, if so, whether Ramangmau was guilty of vehicular homicide. The second part contained the same questions, except that reckless driving was substituted for speeding.

Our review of the record below shows nothing indicating that the jurors were confused or disagreed about the factual basis of Ramangmau's guilt when they reached their final verdict. The instructions given to the jury were straightforward and easily understood. The instructions informed the jurors that speeding and reckless driving were predicate offenses. Under these facts, we will not presume the jury was confused. Therefore, we find no violation of Ramangmau's rights to a fair trial and a unanimous jury decision.

## III. Denial of Motions to Suppress Statements

 We review a motion to suppress de novo.[19] Whether a suspect was in custody for purposes of determining whether the government discharged its duty to apprise the accused of his or her constitutional rights, based on *Miranda v. Arizona*,[20] is a question of law.[21]

 Whether a defendant's confession was voluntary or not is a mixed question of fact and law.[22] The government has the burden of establishing that the defendant intelligently, knowingly, and voluntarily waived his or her rights.[23] The determination of whether there was a valid waiver depends upon the totality of the circumstances.[24]

### A. *Statements at the Scene of the Accident*

Ramangmau contends that he was in custody when police officers questioned him at the scene of the acci-

dent. At that time, the officers did not give him the warnings which, he asserts, were required by *Miranda*. The trial court, Ramangmau argues, therefore violated his right to due process[25] when it denied his motion to suppress his statements.

The government argues that Ramangmau was not in custody at the time these statements were taken. The trial court found that Ramangmau was not in custody for purposes of *Miranda* until he was asked, at the scene of the collision, to get into the police car to go to DPS headquarters.

 *Miranda* warnings must be given when a defendant is subject to police interrogation while in custody.[26] In determining whether custody exists, a court must decide whether there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[27] The test to be applied "is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest."[28] The factor of particular concern is whether the atmosphere was "police dominated."[29]

 Police officers at the scene did not arrest Ramangmau. They asked him to step aside to enable them to secure the scene and attend to the bicyclist. The officers neither attempted to restrain Ramangmau nor treated him harshly. When the officers asked Ramangmau whether he was the driver of the car, bystanders who were not police officers were present. The officers' questions were informational, directed at assessing the accident when they first came on the scene.

---

[19] *United States v. Khan*, 993 F.2d 1368, 1375 (9th Cir. 1993).

[20] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[21] *Kahn*, 993 F.2d at 1375.

[22] *See United States v. Wolf*, 813 F.2d 970, 974 (9th Cir. 1987).

[23] *Commonwealth of the N. Mariana Islands v. Mendiola*, 976 F.2d 475, 484 (9th Cir. 1993); *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992).

[24] *Mendiola*, 976 F.2d at 484.

[25] *See* N.M.I. Const. art. I, § 4(c).

[26] *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706-07.

[27] *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520, 77 L. Ed. 2d 1275, 1279 (1983) (per curiam) (citation and internal quotation marks omitted).

[28] *Connecticut v. DesLaurier*, 646 A.2d 108, 111 (Conn. 1994) (citing *Stansbury v. California*, ___ U.S. ___, 114 S. Ct. 1526, 1529, 128 L. Ed. 2d 293, 298-99 (1994); 1 Wayne R. LaFave & Jerold H. Israel, CRIMINAL PROCEDURE § 6.6 (1984 & Supp. 1991)).

[29] *Deslaurier*, 646 A.2d at 111-12 (citing *Miranda*, 384 U.S. at 445, 467, 86 S. Ct. at 1612, 1624, 16 L. Ed. 2d at 707, 719). We find the *DesLaurier* court's analysis of the custody issue instructive in this case, as the defendant in *DesLaurier*, like Ramangmau, was questioned by police following a serious traffic accident.

Under the circumstances, a reasonable person in Ramangmau's situation would not have felt the pressures of police domination of the type to which *Miranda* and its progeny speak. The interrogation was non-custodial. *Miranda* warnings were not required and denial of Ramangmau's motion to suppress was not error.

## B. *Statements at the Department of Public Safety*

Ramangmau contends that, during questioning at DPS headquarters, he did not voluntarily waive his constitutional right to remain silent or his right to counsel. He maintains that the trial court erred, therefore, in admitting his statements.

The government bore the initial burden of proof on this issue. During the suppression hearing, the government introduced a constitutional rights waiver form initialed and signed by Ramangmau and the testimony of the interviewing officer, Officer Sablan. Ramangmau testified on his own behalf. After considering the pleadings, testimony and exhibits on this issue, the court concluded that Ramangmau "voluntarily and intelligently waived" his rights. We find no error.

■ The "totality of the circumstances" that must be considered to determine whether there was a valid waiver of rights includes the characteristics of the defendant and the details of the questioning.[30] We address each factor in turn below.

### 1. Characteristics of Ramangmau

■ Ramangmau asserts that when he signed the form in which he acknowledged his rights and waived his right to have a lawyer present, he was concentrating "on the accident," not on the form. Appellant's Brief at 18. We are not persuaded that this rendered Ramangmau's *statements inadmissible.*

The collision with the bicyclist may well have been on Ramangmau's mind, but this fact does not establish that he was physically or psychologically incapable of making reasoned decisions. His level of *concentration* was sufficient to enable him to listen to Officer Sablan read him his rights in both English and Chamorro, initial each statement and sign the form to acknowledge that he understood, and answer the officer's questions coher-

ently. In short, we find no evidence that Ramangmau's statements were "not the product of a rational intellect and a free will."[31]

### 2. Details of the Interrogation

■ In the absence of coercive police activity, a confession will not be deemed involuntary.[32] Evidence of such activity includes physical threats of harm, deprivation of sleep or food, lengthy questioning, and psychological persuasion.[33] Nothing in the record indicates that the DPS officer behaved coercively.

■ Ramangmau was not threatened with physical harm or deprived of food or water. To the contrary, Officer Sablan expressly advised Ramangmau that he was not under arrest, and when Ramangmau requested a drink of water, Officer Sablan allowed him to walk, unaccompanied, away from DPS headquarters to get some water. After Officer Sablan finished questioning Ramangmau that afternoon, Ramangmau was not detained, and he left DPS headquarters.

After considering both Ramangmau's personal characteristics and the circumstances surrounding the interrogation, we hold that Ramangmau voluntarily waived his constitutional right to remain silent when he spoke to Officer Sablan at DPS headquarters.

## IV. Denial of Motion to Exclude Evidence of Driving a Mile from the Scene

■ Ramangmau made a motion in limine seeking exclusion of evidence of how he was driving one to one-and-one-half miles from the scene of the accident. The trial court, expressly finding that the relevance and probative value of the evidence outweighed its prejudicial effect, denied the motion. We review this ruling for an abuse of discretion.[34]

Ramangmau asserts that the evidence of his driving behavior at a distance of one to one-and-one-half miles

---

[30] *Kelley*, 953 F.2d at 564-65.

[31] *Id.*, 953 F.2d at 565 (citing *Gladden v. Unsworth*, 396 F.2d 373, 380-81 (9th Cir. 1968)).

[32] *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473, 484 (1986)).

[33] *Id.*

[34] *See Commonwealth v. Saimon*, 3 N.M.I. 365, 375 n.2 (1992) (trial court's admission of evidence over a timely objection is reviewed for abuse of discretion).

from the scene was neither relevant to nor probative of his conduct at the point the accident occurred. Appellant's Brief at 20. The record shows otherwise.

■ To be relevant, evidence need not relate to any particular time with respect to commission of the offense: "The evidence may relate to acts committed or conditions existing prior to, concurrent with, or subsequent to, the commission of the crime. The only limitation with respect to time is that the evidence should not be so remote as to cease to have any probative value."[35]

No fixed standard exists for determining remoteness. The court should, therefore, consider the nature of the evidence offered, the nature of the crime, and all attendant circumstances.[36] The trial court could not have been more clear about conducting this analysis, asking "would that evidence [of the driving behavior in question] have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable tha[n] it would be without the evidence?" Transcript of Proceedings at 354. The court concluded that the evidence "tends to show that the defendant was driving fast," *id.*, and "shows [the] manner of driving." *Id.* at 355.

■ A trial court's decision to admit circumstantial evidence, such as that of Ramangmau's driving behavior immediately prior to the scene, will be sustained if the evidence "tended even somewhat remotely to show that a fact in controversy did or did not exist."[37] We find no error in the trial court's ruling that this evidence was relevant.

■ The trial court still could have excluded the evidence of the driving conduct at issue upon a finding, under Com. R. Evid. 403, that the danger of unfair prejudice *substantially* outweighed the evidence's probative value.[38] After considering the requisite factors under Com. R. Evid. 403, the court decided to admit this "very probative" evidence, Transcript of Proceedings at 355. We find no abuse of discretion.

## V. Denial of Motion for Judgment of Acquittal

■ If a defendant moves for acquittal at the close of the government's case in a jury trial, but fails to renew the motion at the close of all the evidence, the earlier objection to the sufficiency of the evidence will be deemed waived.[39] However, a defendant does not waive an appellate challenge to the sufficiency of the evidence where, as here, she or he first makes a motion for a judgment of acquittal at the close of the government's case-in-chief, then fails to renew the motion at the close of all the evidence, but makes a timely post-trial motion for a judgment of acquittal pursuant to Com. R. Crim. P. 29(c).[40] Such was the case here.

■ We review de novo the denial of Ramangmau's motion for a judgment of acquittal. The test applied is the same as that for a challenge to the sufficiency of the evidence.[41] We determine, therefore, whether any rational trier of fact could have found the essential elements of the crime in question beyond a reasonable doubt.[42] Our review must encompass all of the evidence, direct or circumstantial, viewed in the light most favorable to the government.[43]

Ramangmau limits his argument to the contention that the government failed to present evidence that he was driving recklessly and that such recklessness proximately caused the death of the bicyclist. We find no merit to this claim.

■ A trial court should deny a motion for a judgment of acquittal under Com. R. Crim. P. 29(a) unless the government's evidence "is insufficient to sustain a conviction."[44] In other words, the motion for acquittal must be granted only if "there is no evidence upon which a reasonable mind might fairly conclude guilt

---

[35] 1 Charles E. Torcia, WHARTON'S CRIMINAL EVIDENCE § 91 (14th ed. 1985).

[36] *Id.* § 92.

[37] *Id.* § 94; *see, e.g., Commonwealth v. Delos Santos,* 3 CR 661, 671 (D.N.M.I. App. Div. 1989) (finding no abuse of discretion where court admitted photograph which made it significantly more likely, but did not conclusively prove, that gun seized by police was same gun held by defendant in photograph).

[38] *See Saimon,* 3 N.M.I. at 375.

[39] *United States v. Winslow,* 962 F.2d 845, 850 (9th Cir. 1992); 2 Wright, *supra* note 16, § 463.

[40] *See United States v. Castro-Lara,* 970 F.2d 976, 980 (1st Cir. 1992), *cert. denied sub nom., Sarraff v. United States,* 508 U.S. ___, 113 S. Ct. 2935, 124 L. Ed. 2d 684 (1993).

[41] *United States v. Lessard,* 17 F.3d 303, 304 (9th Cir. 1994).

[42] *Commonwealth v. Tenorio,* 3 CR 679, 683 (D.N.M.I. App. Div. 1989).

[43] *Id.*

[44] Com. R. Crim. P. 29(a).

beyond a reasonable doubt."[45] In making this assessment, the court may not weigh or draw inferences from the evidence, or assess witnesses' credibility; these are functions of the jury.[46] The existence of conflicting testimony does not, in itself, merit a judgment of acquittal.[47]

■ Ramangmau concedes that the government offered evidence "as to [the] speed," Appellant's Brief at 22, at which Ramangmau was traveling when the collision occurred. Sergeant N. Guerrero gave expert testimony that Ramangmau's speed on impact with the bicyclist was at least forty-nine miles per hour, and Sergeant J. Guerrero testified that the collision occurred in an area with a posted speed limit of thirty-five miles per hour. From this testimony, a fact finder could infer that Ramangmau was driving in a manner evincing a willful or wanton disregard for the safety of property or persons.

The government also called an eyewitness who testified that, one to one-and-one-half miles from the scene of the accident, Ramangmau pulled his car in front of the vehicle in which the eyewitness was traveling, nearly causing the two vehicles to collide. This same eyewitness expressed her belief, however, that Ramangmau was not speeding when he collided with the bicyclist. It was up to the jury to assess the credibility of this witness and the other witnesses called. Viewing the evidence in the light most favorable to the government, we hold that a reasonable fact finder could have concluded beyond a reasonable doubt that Ramangmau committed the offense of reckless driving, and that such driving was a proximate cause of the bicyclist's death.

## VI. Jury Instruction on the Elements of Vehicular Homicide

■ Whether the trial court properly instructed the jury as to the elements of vehicular homicide is a question of law which we review de novo.[48] However, where the defendant fails to object contemporaneously to the instruction,[49] we review for plain error.[50]

Ramangmau claims that commission of the crime of vehicular homicide requires (1) occurrence of an accident, (2) the commission of a predicate offenses (e.g., reckless driving or speeding), and (3) occurrence of the accident on a "public highway." Appellant's Brief at 24. He asserts that the trial court committed reversible error by failing to instruct the jury on the "essential elements" of vehicular homicide because it did not use the term "public highway." Our analysis shows otherwise.

■ The trial court must instruct the jury "'[o]n all essential questions of law whether requested or not.'"[51] In assessing the completeness of the instructions, we "'consider whether the instructions as a whole were misleading or inadequate to guide the jury's determination.'"[52]

■ The court instructed the jury as follows:

Reckless Driving is every person who drives or operates any vehicle upon a *highway* in willful or wanton disregard for the safety of persons or property is guilty of Reckless Driving . . . . As to the speeding charge, all motor vehicles traveling upon the *highway* shall be operated at a careful prudent rate of speed not greater than nor less than is reasonable and proper having due regard to the surface of the *highway*, the width of the *highway*, and the condition of traffic upon the *highway*, and all other restrictions and conditions then and there existing. In no event shall any motor vehicle be operated at a speed greater than will permitted to be stopped within the assured clear distance ahead. And subject to those two paragraphs that I have just read to you, speeds in excess of 45 miles per hour are unlawful. The director may desig-

---

[45] *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir.), *cert. denied*, 331 U.S. 837, 67 S. Ct. 1511, 91 L. Ed. 1850 (1947).

[46] *See id.*; 2 Wright, *supra* note 16, § 467.

[47] 2 Wright, *supra* note 16, § 467.

[48] *United States v. Baldwin*, 987 F.2d 1432, 1437 (9th Cir.), *cert. denied*, 508 U.S. ___, 113 S. Ct. 2948, 124 L. Ed. 2d 696 (1993).

[49] Not only did Ramangmau fail to object, but he also acquiesced in the content of the instruction during discussions with the court and the government.

[50] *United States v. Fagan*, 996 F.2d 1009, 1016 (9th Cir. 1993); *see also Commonwealth v. Esteves*, 3 N.M.I. 447, 452 (1993).

[51] *Esteves*, 3 N.M.I. at 454 (quoting *Morris v. United States*, 156 F.2d 525, 527 (9th Cir. 1946)). We decline to follow the government's suggestion, based on *Baldwin*, *supra*, that we deny review of Ramangmau's challenge to the jury instruction based on the invited error doctrine.

[52] *Esteves*, 3 N.M.I. at 454 (quoting *Stoker v. United States*, 587 F.2d 438, 440 (9th Cir. 1987)).

nate, by regulation[,] certain areas as limited speed areas and mark those areas with appropriate warning signs, no vehicle may be operated in those areas in excess of the maximum speeds as are indicated by the signs. . . . [I]n order to find defendant guilty of the crime of Homicide by Vehicle the government must prove . . . . [n]umber one, . . . Ramangmau, while operating a motor vehicle unlawfully and unintentionally caused the death of [the bicyclist]; and, two . . . Ramangmau, while operating a motor vehicle was committing the offense of speeding, or reckless driving, or both; and . . . three, the violation of one or both of those laws was the proximate cause of [the bicyclist's] death.[53]

■ One element of the crime of vehicular homicide consists of the violation of "any law applying to the operation or use of a vehicle or to the regulation of traffic."[54] In the present case, the underlying traffic laws alleged to have been violated were the crimes of speeding and reckless driving. The elements of these underlying offenses differ from the elements of vehicular homicide.

The statutory definition of vehicular homicide in 9 CMC § 7110 does not use the term "public highway." The definition of reckless driving includes the term "highway," and the definition of speeding includes "public highway." In instructing the jury with respect to reckless driving and speeding, the trial court used the term "highway" five times. Thus, the trial court did not err by not using the term "public highway" when instructing the jury on the elements of vehicular homicide. The instructions as a whole were not misleading or inadequate.[55]

---

[53] Transcript of Proceedings at 1100-02 (emphasis added). From the context, it is clear that the trial court used the term "highway" to mean "public highway." Indeed, "highway" means "[a] free and public roadway; one which every person has the right to use." BLACK'S LAW DICTIONARY 728 (6th ed. 1990).

[54] 9 CMC § 7110(a).

[55] Even if the trial court erred by failing to instruct the jury on the "public highway element," the harmless error analysis applies. See Baldwin, 987 F.2d at 1438. Error is harmless "if the omitted element is undisputed and, therefore, its omission could not possibly have been prejudicial." United States v. King, 587 F.2d 956, 966 (9th Cir. 1978). As noted above, it is an undisputed fact in this case that the collision occurred on Beach Road in Saipan. Therefore, the error, if any, was harmless.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of conviction entered against Ramangmau.