United States Court of Appeals

For the Eighth Circuit

_____

No. 12-3134

_____

United States of America

*Plaintiff - Appellant*

v.

Javier Amaya

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: May 17, 2013
Filed: September 23, 2013

_____

Before SHEPHERD, BEAM, and MELLOY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury found Javier Amaya guilty of one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The district court[1] granted appellee's

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

motion for a new trial. The government now appeals the grant of a new trial. We affirm.

## I.

A grand jury indicted brothers Angel Amaya and Javier Amaya and two others for conspiracy to commit money laundering involving proceeds of unlawful drug activities. The grand jury also charged Angel and four others with a drug conspiracy offense. All defendants except the Amaya brothers entered guilty pleas. After two mistrials, the case against the Amayas was finally submitted to a jury.

During the Amaya brothers' four-day joint trial, the government presented evidence showing that on February 8, 2011, Javier opened a bank account with a Wells Fargo Bank branch in Sioux City, Iowa, using his own name and biographical information. Angel was with Javier when the account was opened, and Javier deposited $7800 in cash provided by Angel into the account. When the teller, who was Angel's friend, asked Angel where the money came from, Angel replied, "don't worry about it, you don't want to know." Angel also opened a new account that day, depositing $8000 into it. Two of Angel's associates opened new Wells Fargo accounts on February 8 and either deposited or had deposited into them $8100 and $8000, respectively. Immediately after opening these accounts, the four traveled to California. On February 10 and 11, 2011, the four withdrew the money from their accounts and gave it to Angel who used the money to pay a person known as el Paisa.

The government also presented evidence to the jury including the testimony of witnesses that when Angel was not home that Javier distributed drugs to buyers, that purchasers left payment for Angel with Javier, and that Javier was present when Angel distributed drugs and discussed obtaining large quantities of drugs for resale.

When the jury returned, the foreperson informed the court that the jury had reached a unanimous verdict. After the verdict form was handed to the judge, the judge remarked:

> Well, I've noticed a problem with the verdict form that wasn't—it's our fault. Well, let's go through—okay.

(Trial Tr. 639.) The court then read the verdict pertaining to Angel where it found him guilty of both the money-laundering conspiracy and the drug conspiracy. The court polled the jury as to the guilty verdict against Angel.

On the verdict form, the jury was presented with a two-part question pertaining to the money-laundering conspiracy charge against Javier. In "Step 1: Verdict" the jury was instructed "[o]n the 'money laundering conspiracy' offense in Count 2 of the Indictment and explained in Instruction Nos. 5 and 8, [to] please mark your verdict." The form, however, did not provide any place for the jury to mark a verdict of guilty or not guilty. The "Step 1: Verdict" continued with instructions that "[i]f you find the defendant 'not guilty' in this offense, do not answer the question in Step 2." In "Step 2: 'Objectives' of the 'Money Laundering Conspiracy,'" the jury was instructed "[i]f you found the defendant 'guilty' of the 'money laundering conspiracy' offense in Count 2 of the Indictment, please indicate which one or more money laundering offenses the conspirators agreed to commit as 'objectives' of the 'money laundering conspiracy.'" The jury was given two options in "Step 2" and marked on the verdict form that the "objective" of the offense was "to conceal proceeds of the drug conspiracy."

The district court explained the error as follows:

> Now, with regard to Javier Amaya, the verdict form is inaccurate because it doesn't have a place for you to check guilty or not guilty in step 1. But you've checked objectives—you checked the second

objective, to conceal proceeds of the drug conspiracy. But what I want to know is with regard to Javier Amaya, do you find him guilty in step 1 of the money laundering conspiracy?

(Trial Tr. 640.)

The district court then proceeded, without first consulting the parties, to poll the jurors to confirm that they had reached a unanimous verdict as to Javier. Each juror answered affirmatively. The court later performed a second polling "to make sure everybody's unanimous intent was to find Javier Amaya guilty of money laundering." The court asked the jury, "Is that your intent?" (Trial Tr. 641.) Again, each juror answered affirmatively. Neither the government nor the defense counsel objected to the procedure and neither sought to make a record of the error in the verdict form.

Both Amaya brothers filed post-trial motions for acquittal or alternatively for a new trial, raising several issues. As relevant to this appeal, Javier argued that the absence of a place to indicate the verdict on the verdict form in combination with the polling of the jury warranted a grant of a mistrial or a new trial. The district court agreed, noting it "remain[ed] concerned that the jurors may have felt coerced by the error in the verdict form and, just as importantly, by my immediate attempt to correct that error by polling the jury to obtain their individual verdicts in open court." The court granted Javier's motion for a new trial, holding that there was a plain error in the verdict form, that the error had an improper influence on the jury and thus affected Javier's substantial rights, and that the error of improper procedure affected the fairness, integrity, and public reputation of the judicial proceedings.

The government now appeals, arguing that the district court abused its discretion in granting the motion for a new trial.

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant a Rule 33 motion is within the sound discretion of the District Court, and we will reverse only for an abuse of that discretion." United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004).[2] When considering a motion for a new trial, a district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002) (quotation omitted). Despite the broad discretion district courts enjoy under this rule, we have endeavored to remind courts that the discretion has limits and the courts "must exercise the Rule 33 authority 'sparingly and with caution.'" Id. (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). "Corresponding to the district court's broad discretion is the limited scope of our review: we will reverse the district court's ruling on the motion for new trial only if we find that ruling to be a clear and manifest abuse of discretion." United States v. Malloy, 614 F.3d 852, 862 (8th Cir. 2010) (quoting Lincoln, 630 F.2d at 1319), cert. denied, 131 S. Ct. 3023 (2011). We will find a district court abused its discretion if it "fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors." Dodd, 391 F.3d at 934.

Because neither party objected to either the verdict form or the polling of the jury, the district court applied the plain error standard in deciding to grant Javier's motion for a new trial. See Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b); United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988) (holding that it is appropriate

---

[2]Both parties agree that abuse of discretion is the appropriate standard of review in this case despite the district court's application of a plain error standard.

for district court to apply plain error review to a defendant's motion for new trial where issues were not objected to during trial). The district court found it committed two specific plain errors. First, it determined that the verdict form for Javier was plainly erroneous because it was obvious that the form should have contained a place for the jury to indicate its verdict but that place was missing on the form. Second, the court decided that it committed error when it "substitut[ed] polling of the jury for the rendering of a verdict on a properly composed verdict form after private deliberations." The district court held that these combined errors "potentially ha[d] the same effect as polling deadlocked jurors" which the court found may have had a coercive effect on the jury, that being the jury may have rendered a premature verdict without the ordinary safeguards of private deliberations with a proper verdict form. Finally, the district court held that the errors were such a departure from the normal procedure for returning and recording a jury verdict that it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011) ("To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

We find no abuse of discretion in the district court's determination that the verdict form error and the substitution of a polling procedure for a return of the verdict constituted plain error. First, although Federal Rule of Criminal Procedure 31(a) provides only that "[t]he jury must return its verdict to a judge in open court," the clear intent of the district court in this case for the jury to indicate the verdict on a properly completed verdict form is obvious. By comparison, for both counts against Javier's brother Angel the jury was provided a place to indicate its verdict.[3] Next, the

---

[3]The dissent emphasizes that "district courts have wide latitude in constructing either written or oral jury instructions, including written or oral verdict information."

Rules dictate that the court may poll the jury "[a]fter a verdict is returned." Fed. R. Crim. P. 31(d). There is simply no procedure in place for the jury to return a verdict through polling by the court. "The purpose of a jury poll 'is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned,' to ensure that 'a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.'" United States v. Cherry, 720 F.3d 161, 167 (4th Cir. 2013) (quoting United States v. Carter, 772 F.2d 66, 68 (4th Cir. 1985)). Thus, the district court's finding of plain error was not an abuse of discretion.[4]

See infra at 15. Assuming the district court could have made a conscious decision to permit the return of verdict by oral pronouncement, that is not the procedure the district court elected to utilize in this case. Rather, the district court's instructions demonstrated a clear intent for the jury to return its verdict on a written verdict form. The critical component of the form—a place for the jury to indicate the verdict—was missing. We reject the dissent's characterization of this significant error as "a minor ambiguity" or a "slight imperfection." See infra at 10, 16. The dissent cannot dispute that the district court had the discretion to require the jury to return the verdict through a completed verdict form, and the district court clearly instructed the jury in this case to do so, but then provided a fatally flawed form to the jury. Compounding this significant error, the district court, without taking time to properly consider how best to proceed when the intended procedure was disrupted, polled the jury with the presumptive question "do you find him guilty in step 1 of the money laundering conspiracy?" (Trial Tr. 640.)

[4]The dissent characterizes our decision in Cundiff v. United States, 501 F.2d 188 (8th Cir. 1974) (per curiam), as "a substantially similar context" to the circumstances presented here. See infra at 17. Cundiff is easily distinguishable from this case. The defendant in Cundiff recognized the potential error before the jury returned the verdict, and the district court called the jury back into the courtroom before completion of deliberations to explain the proper use of the forms and to clarify that the jury was not required to find the defendant guilty of the lesser-included offense. Cundiff, 501 F.2d at 190. The dissent also attempts to draw a comparison to the use of a jury poll in the two cases, claiming that the district court in Cundiff "also conducted a jury poll . . . as was also done in this case." See infra

-7-

Nor do we find that the court abused its discretion when it determined that the errors affected Javier's substantial rights. See United States v. Olano, 507 U.S. 725, 734 (1993) (holding that in most cases, for an error to affect a defendant's substantial rights, the error must be prejudicial). In the circumstance of polling a deadlocked jury, the Supreme Court explained:

> Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

Brasfield v. United States, 272 U.S. 448, 450 (1926). We have previously indicated that concerns about errors in polling depend on "whether it is likely that the proceedings conducted by the trial court coerced the juror in arriving at his final verdict." Amos v. United States, 496 F.2d 1269, 1272 (8th Cir. 1974). As Brasfield cautions, the conducting of a poll of the jury before a verdict has been properly returned "can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury." Brasfield, 272 U.S. at 450. The district court expressed concerns that when it substituted the polling procedure for a return of verdict through a properly completed verdict form it fell within Brasfield's warning that the action "can rarely be resorted to without bringing to bear in some degree . . . an improper influence upon the jury." Id.

---

at 17. Such claim by the dissent fails to draw an important distinction. The polling in this case was done in substitution for the return of the verdict whereas the polling in Cundiff was conducted "[a]fter the jury returned its verdict." Cundiff, 501 F.2d at 190.

Finally, the district court noted that the error in the verdict form and the polling procedure was a significant departure from regular procedure "as to seriously affect the fairness, integrity, or public reputation of judicial proceedings." Indeed this procedure is so irregular that the district court could "find no opinions of the federal Circuit Courts of Appeals or the Supreme Court squarely on point with the circumstances presented here." We have also been unable to find cases which are "on point" or more analogous to those considered by the district court or presented by the parties in their briefs. This suggests that the procedure employed by the district court to return and record the verdict in this case was a significant departure from traditional practice. While nothing in the criminal rules specify the manner in which the verdict must be returned, the facts of this case make it obvious that the court intended the jury to indicate its verdict on the verdict form. In light of this, we cannot say the district court's determination that the procedure seriously affected the "fairness, integrity, or public reputation of judicial proceedings" was an abuse of discretion.

We note that the government's brief presents strong arguments, does a commendable job of attempting to distinguish adverse cases, and cites to cases that, while not binding or squarely on point, generally support its argument. Indeed, the dissent finds the government's argument to be persuasive, and we recognize that the dissent's opinion makes a case for why the district court could have been affirmed had the court denied the motion for a new trial. However, the district court granted the motion for a new trial, and in so doing, also presented persuasive and introspective reasoning for why its missteps justified the grant of a new trial. Under the confines of the abuse of discretion review, "we defer to the ruling of a respected, able trial judge" because "the trial judge, not an appellate court reading a cold record, can best weigh the errors against the record as a whole to determine whether those errors in the conduct of the trial justify a new trial." McBride, 862 F.2d at 1320.

III.

Accordingly, we affirm.

BEAM, Circuit Judge, dissenting.

A federal trial court may not order the "do over" of a substantially error-free criminal trial simply because the court wants to try to do a slightly better job the next time around or because the court believes the jury may produce a more acceptable result.  As I explain in more detail below, a minor ambiguity in one sentence of one jury instruction does not support a new trial that will unreasonably waste tax dollars, unnecessarily exhaust prosecutorial resources of the Northern District of Iowa and thoughtlessly burden under-compensated members of the District's jury pool.  This particular jury, being a typically perceptive, intellectually astute and self-reliant American federal court deliberative body, faultlessly worked its way through a marginal instructional imperfection to reach a well-reasoned and evidentiarily supported verdict.  Thus, the district court's faulty discernment and errant application of plain trial error, coupled with its capricious overturning of the jury's work product, constituted a fundamental abuse of judicial discretion.  From this untoward result, I dissent.

Notwithstanding the district court's seventy-two page explication on multiple aspects of the Amaya brothers post-trial motions, the factual and legal issues in this appeal are relatively simple.  The dispute bottoms on whether Javier Amaya was guilty of being part of an 18 U.S.C. § 1956 money laundering conspiracy as affirmatively and unanimously determined by a jury of his peers.  And, there can be no doubt that Javier was indeed guilty as charged.

To begin, I adopt the court majority's factual recitation as set forth in the first three paragraphs of Section I. For purposes of this dissent, I further emphasize the following facts.

At the beginning of the trial, the district court orally instructed the jury on juror responsibilities, trial procedure, the substantive law applicable to the criminal charges against each defendant and the requirements for formalizing and returning a verdict. Each juror was also provided a written copy of these oral instructions for use during the trial. Both the written and oral instructions contained verdict formulation language which included words and marks to be used by the jury in returning a verdict specific to each defendant. The district court read from the written instructions pertaining to the money laundering conspiracy charges against the Amayas as follows:

> Then Count 2, money laundering, step 1 is the verdict. On the money laundering conspiracy offense in Count 2 of the indictment and explained in instructions numbers 5 and 8, please mark your verdict. If you find the defendant [Angel Amaya] not guilty of this offense, do not answer the question in step 2. Instead go on to consider your verdict on the charge against Defendant Javier Amaya. There's a place for not guilty and guilty.

> And then step 2, objectives of the money laundering conspiracy, if you found the defendant [Angel Amaya] guilty of the money laundering conspiracy offense in Count 2 of the indictment, please indicate which one or more money laundering offenses the conspirators agreed to commit as objectives of the money laundering conspiracy. Objectives of the money laundering conspiracy were explained in instruction number 8. To promote the carrying on of the drug conspiracy, to conceal proceeds of drug conspiracy, or to avoid transaction reporting requirements under federal law.

> . . .

-11-

[T]hen Roman numeral two on page four of the verdict form involves Javier Amaya. As to Defendant Javier Amaya, we, the jury, unanimously find as follows. Notice it's only Count 2 because Javier Amaya's only charged in the money laundering count. Step 1, verdict, and then I'm not going to repeat it because it's the identical money laundering with regard to the other – the first defendant.

Following is a copy of the verdict reached for each defendant as completed by the jury.



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ANGEL AMAYA and JAVIER AMAYA,

Defendants.

No. CR 11-4065-MWB

VERDICT FORM

## I. DEFENDANT ANGEL AMAYA

As to defendant Angel Amaya, we, the Jury, unanimously find as follows:

| COUNT 1: THE DRUG CONSPIRACY | | VERDICT |
|---|---|---|
| Step 1: Verdict | On the "drug conspiracy" offense in Count 1 of the Indictment and explained in Instruction Nos. 5 and 6, please mark your verdict. (*If you find the defendant "not guilty" of this offense, do not answer the questions in Steps 2 and 3. Instead, go on to consider your verdict on Count 2.*) | ___ Not Guilty<br>X Guilty |
| Step 2: "Objectives" of the "Drug Conspiracy" | If you found the defendant "guilty" of the "drug conspiracy" offense in Count 1 of the Indictment, please indicate which one or more illegal drugs the conspirators agreed to possess with intent to distribute, as "objectives" of the "drug conspiracy." ("Objectives" of the "drug conspiracy were explained in Instruction No. 6.) | |
| | X methamphetamine | |
| | X cocaine | |
| | X marijuana | |

-12-

| Step 3: Quantity of Methamphet-amine and Cocaine | If you found the defendant "guilty" of the "drug conspiracy" offense in *Count 1 of the Indictment*, please indicate the quantity of any methamphetamine or cocaine involved in the conspiracy for which the defendant can be held responsible. (*Quantity of illegal drugs is explained in Instruction No. 7.*) | | |
|---|---|---|---|
| | ___ methamphetamine | | |
| | X 500 grams or more | ___ 50 grams or more | ___ less than 50 grams |
| | ___ cocaine | | |
| | X 500 grams or more | | ___ less than 500 grams |
| **COUNT 2: MONEY LAUNDERING CONSPIRACY** | | | **VERDICT** |
| Step 1: Verdict | On the "money laundering conspiracy" offense in Count 2 of the Indictment and explained in Instruction Nos. 5 and 8, please mark your verdict. (*If you find the defendant "not guilty" of this offense, do not answer the question in Step 2. Instead, go on to consider your verdict on the charge against defendant Javier Amaya.*) | | ___ Not Guilty  <br> X Guilty |
| Step 2: "Objectives" of the "Money Laundering Conspiracy" | If you found the defendant "guilty" of the "money laundering conspiracy" offense in Count 2 of the Indictment, please indicate which one or more money laundering offenses the conspirators agreed to commit as "objectives" of the "money laundering conspiracy." (*"Objectives" of the "money laundering conspiracy" were explained in Instruction No. 8.*) | | |
| | X to promote the carrying on of the drug conspiracy | | |
| | X to conceal proceeds of the drug conspiracy | | |
| | X to avoid transaction reporting requirements under federal law | | |

## II. JAVIER AMAYA

As to defendant Javier Amaya, we, the Jury, unanimously find as follows:

| **COUNT 2: MONEY LAUNDERING CONSPIRACY** | |
|---|---|
| Step 1: Verdict | On the "money laundering conspiracy" offense in Count 2 of the Indictment and explained in Instruction Nos. 5 and 8, please mark your verdict. (*If you find the defendant "not guilty" of this offense, do not answer the question in Step 2. Instead, notify the Court Security Officer (CSO) that you have reached a verdict.*) |
| Step 2: "Objectives" of the "Money Laundering Conspiracy" | If you found the defendant "guilty" of the "money laundering conspiracy" offense in Count 2 of the Indictment, please indicate which one or more money laundering offenses the conspirators agreed to commit as "objectives" of the "money laundering conspiracy." (*"Objectives" of the "money laundering conspiracy" were explained in Instruction No. 8.*) |
| | _____ to promote the carrying on of the drug conspiracy |
| | X to conceal proceeds of the drug conspiracy |
| | ___ to avoid transaction reporting requirements under federal law |
| **CERTIFICATION** | |

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant was not involved in reaching his or her individual decision, and that the individual juror would have returned the same verdict for or against the defendant on the charged offense regardless of the race, color, religious beliefs, national origin, or sex of the defendant.

6-1-12
Date

-13-

Federal Rule of Criminal Procedure 33(a) provides that, upon defendant's motion, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." "The Rule does not define 'interests of justice' and the courts have had little success in trying to generalize its meaning." United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989); see also Morales-Fernandez v. I.N.S., 418 F.3d 1116, 1119-20 (10th Cir. 2005) ("'interests of justice' is a rather elusive concept"); United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992) ("Justice is an ideal that defies precise definition."). For this reason, in order to understand what "interest of justice" means, the phrase must be placed in specific context. Rule 33 allows a defendant to file a motion for a new trial "based on newly discovered evidence" (Rule 33(b)(1)) or "grounded on any reason other than newly discovered evidence" (Rule 33(b)(2). This latter basis is referred to as "other grounds."

One of the most common "other grounds" basis for a new trial motion is that the verdict is against the weight of the evidence. 3 Charles Alan Wright, et al., Federal Practice & Procedure Criminal § 582 (4th ed.). When this is the basis for the motion, "[a] district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." United States v. McClellon, 578 F.3d 846, 857 (8th Cir. 2009) (quotation omitted). Here, however, the district court did not grant the Rule 33 motion for evidentiary reasons but rather grounded the ruling in a perception that legal error had occurred. Indeed, and even though the court majority fails to mention this important point, the district court correctly and specifically determined in its new trial analysis that Javier Amaya is "not entitled to . . . [a] new trial[] on the money laundering conspiracy on the basis of insufficiency of the evidence."

Rather, proceeding under the "other grounds" rubric of Rule 33(b)(2), the district court employed a plain error test as formulated in Federal Rule of Criminal Procedure 52(b). This Rule 52(b) analysis involved, of course, the adequacy of the

-14-

jury instructions, more specifically the instructions dealing with the return of a verdict against Javier.

Although many trial judges find it good practice to provide juries with written copies of instructions on the law applicable in a particular case, including verdict formulation instructions, others do not follow that practice, relying upon the official record of the trial to provide a description of such information when needed. Both approaches are acceptable because written instructions including verdict-related instructions are not required in federal trial courts. United States v. Eberhardt, 657 F.2d 221, 222 (8th Cir. 1981); United States v. Johnson, 466 F.2d 537, 538 (8th Cir. 1972) (per curiam).

In any event, district courts have wide latitude in constructing either written or oral jury instructions, including written or oral verdict information. See United States v. White Calf, 634 F.3d 453, 456 (8th Cir. 2011) (reviewing formulation of jury instructions for an abuse of discretion); United States v. Martison, 419 F.3d 749, 753 (8th Cir. 2005) (reviewing verdict form for an abuse of discretion). Jury instructions of either kind are sufficient "if they fairly and adequately submitted the issues to the jury." United States v. Espinoza, 684 F.3d 766, 783 (8th Cir.) (quotations omitted), cert. denied, 133 S. Ct. 589 (2012). And, we have never required jury instructions, including verdict forms contained therein, to be faultless or to fit the individualized or idiosyncratic preferences of a particular judge.

In both civil and criminal cases, this court has recognized that any alleged error in a verdict instruction must be viewed within the broader context of the jury instructions as a whole. United States v. Brown, 330 F.3d 1073, 1077-78 (8th Cir. 2003) ("the jury instructions and verdict form viewed as a whole did not allow the jury to convict [the defendant] of a different offense than . . . charged"); Gander v. FMC Corp., 892 F.2d 1373, 1378 (8th Cir. 1990) ("We must . . . consider whether the form, taken together with the instructions to the jury, is so misleading or

-15-

confusing that the jury verdict cannot stand. In determining whether the verdict form is confusing, we must consider it in light of the instructions given.") And, within this expansive context, where the jury instructions as a whole properly charge the jury, use of an instruction that is marginally imperfect or lacks some clarity does not render the instruction illusory, coercive or constitute reversible error. United States v Hall, 325 F.3d 980, 982 (8th Cir. 2003) (citing Crimm v. Mo. Pac. R.R., 750 F.2d 703, 711 (8th Cir.1984)). This is especially true, where, as here, the most that can be said in support of the trial judge's Rule 33 new trial order is that there might conceivably have been a small measure of ambiguity in one phrase pertaining to one instruction, and even more, as here, when the purported ambiguity presents no hint whatever of having confused the jury.

As earlier noted, the district court informed the jury that the money laundering verdict instructions initially given for Angel Amaya and those given immediately thereafter for Javier Amaya were identical. And this was true, except that the words "not guilty" and "guilty" with a line behind each word or words, although included in Angel's instruction, were omitted from Step 1 of Javier's instruction. There can be little doubt, however, that the jury fully understood it could and should find Javier *either* "not guilty" or "guilty." First, the jury instructions as a whole informed the jury of the charge and explained that each charge against each defendant needed to be considered separately, that each charge required a unanimous verdict, and that the jury had the option to find Javier either "not guilty" or "guilty." Second, on Javier's verdict form, like that of Angel, the jury was instructed that it should only move to "Step 2" if it found that Javier was guilty under "Step 1." The jury moved to "Step 2," in both instances, specifically finding, as relevant here, that Javier committed an objective in the money laundering conspiracy, namely concealing proceeds of the drug conspiracy. Finally, after the district court mentioned the verdict form issue it perceived to the jury, it then conducted a poll in which each individual juror in open court confirmed the earlier announced unanimous guilty verdict. Thus, there is no indication whatever in the trial record, that the slight imperfection in the verdict form

-16-

imagined by the trial court–arising from the words in Step 1 saying "please mark your verdict" when there was no specific place to make such a mark except in the "Objectives" findings portion–constituted error of any hue let alone plain error. Indeed, since the record (including evidence of yet a second poll of the jurors) provides ample assurance that the jury intended to find Javier guilty, the verdict instruction had no adverse affect upon his substantial rights. And, with these assurances of a proper guilty verdict, nothing suggests that the verdict form's alleged minor imperfection could have affected the fairness, integrity, or public reputation of Javier's trial. Accordingly, these assurances viewed in the alternative context of a trial court's supervisory discretion, clearly establish wholly abusive conduct on the part of the trial judge in its overturning of the jury's fully supportable guilty verdict.

In Cundiff v. United States, this court determined that no error occurred in a substantially similar context. 501 F.2d 188 (8th Cir. 1974) (per curiam). Cundiff highlighted that the district court verbally explained the verdict instructions, as was done in this case, and also conducted a jury poll where "each juror agreed that the verdict was his separate and individual verdict," id. at 190, as was also done in this case.

Further, and perhaps more importantly, the trial court's supposed concern about the instructional ambiguity is much adieu about nothing. Every required facet of the return of a verdict in a federal criminal trial was fully complied with in this case. Federal Rule of Criminal Procedure 31 states, in relevant part, as follows:

> (a) Return. The jury must return its verdict to a judge in open court. The verdict must be unanimous.
>
> . . .
>
> (d) Jury Poll. After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll

-17-

the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

So, without regard to the so-called instructional omission and resulting ambiguity, Rule 31's requirements were followed to the letter in this case. The trial record reports that the following occurred in open court:

(The jury entered the courtroom.)

THE COURT: Thank you. Please be seated.
And who is the foreperson? Okay. Mr. Knaack, did I pronounce that correctly? Has the jury reached a unanimous verdict?

JUROR KNAACK: Yes, sir.

THE COURT: Okay. Would you hand the verdict form to Melissa, and then she'll hand it to me, and I'll review it. And then once I've reviewed it, I'll announce the verdict.

She never peeks. I just can't believe that.

Well, I've noticed a problem with the verdict form that wasn't – it's our fault. Well, let's go through – okay.

With regard to Defendant Angel Amaya, you found the defendant guilty of the drug conspiracy, checked methamphetamine, cocaine, and marijuana, found on the methamphetamine 500 grams or more, found on the cocaine 500 grams or more, and on the money laundering count found the defendant guilty and then checked all three objectives.

So, with regard to Defendant Angel Amaya, is that your true and correct verdict? And we'll just start in the back row, and we'll go down the row.

JUROR SCHROEDER: Yes.

JUROR LIEN: Yes.

JUROR KNAACK: Yes, sir.

JUROR TONNER-COLVERT: Yes.

JUROR MULDER: Yes, sir.

JUROR BARGE: Yes.

JUROR MILLER: Yes, sir.

JUROR PLATHE: Yes, sir.

JUROR HOEKSTRA: Yes, sir.

JUROR SUHR: Yes, sir.

JUROR MOLGAARD: Yes, sir.

JUROR GAGNON: Yes, sir.

. . .

THE COURT: Now, with regard to Javier Amaya, the verdict form is inaccurate because it doesn't have a place for you to check guilty or not guilty in step 1. But you've checked objectives – you checked the second objective, to conceal proceeds of the drug conspiracy. But what I want to know is with regard to Javier Amaya, do you find him guilty in step 1 of the money laundering conspiracy?

JUROR KNAACK: Yes, sir.

THE COURT: And we'll just start in the back row again.

JUROR SCHROEDER: Yes, sir.

JUROR LIEN:  Yes, Your Honor.

JUROR KNAACK:  Yes.

JUROR TONNER-COLVERT: Yes.

JUROR MULDER: Yes, sir.

JUROR BARGE: Yes, sir.

JUROR MILLER: Yes, sir.

THE COURT: Front row?

JUROR HOEKSTRA: Yes, sir.

JUROR SUHR: Yes, sir.

JUROR MOLGAARD: Yes, sir.

JUROR GAGNON: Yes, sir.

JUROR PLATHE: Yes, sir.

THE COURT: And then with regard to step 2, the objectives, you have crossed out the third objective which I had asked you to do before closing arguments.  And then there's an X next to the second objective which is to conceal the proceeds of the drug conspiracy.  There's a checkmark next to X.

So I just want to make sure that everybody's unanimous intent was to find Javier Amaya guilty of money laundering because that's the only charge he's charged with and to find that it was to conceal the proceeds of the drug conspiracy.  And just to be sure, because it's our screw-up on the verdict form, we'll start in the back row again.  Is that your intent?

JUROR SCHROEDER: Yes.

-20-

JUROR LIEN: Yes.

JUROR KNAACK: Yes, sir.

JUROR TONNER-COLVERT: Yes.

JUROR MULDER: Yes, sir.

JUROR BARGE: Yes, sir.

JUROR MILLER: Yes.

THE COURT: Front row?

JUROR HOEKSTRA: Yes, sir.

JUROR SUHR: Yes, sir.

JUROR MOLGAARD: Yes, sir.

JUROR GAGNON: Yes.

JUROR PLATHE: Yes, sir.

. . .

(The jury exited the courtroom.)

Thus, it is abundantly clear that notwithstanding the minor ambiguity in the jury instruction arising from the words "please mark your verdict" with no obvious place to make a mark–but telling the jury to next move on to the "objectives" inquiry unless it found Javier not guilty–all requirements of Rule 31 were more than adequately met.

Accordingly, even if one could give any measure of credence to the district court's purported concerns about polling the jurors in open court instead of returning

them for more deliberation, such concerns were more than belied by the jury polling that occurred not just once, but twice. Indeed, impugning the credibility of the juror's polling responses on this record constitutes unsupportable diminution of the jury room independence, intellectual acuity and ethical integrity of this jury. Under the circumstances presented in this case, United States v. Howard, establishes the absolute propriety of polling the jury as a proper mechanism to clear up any ambiguity in the finality of a jury verdict. 507 F.2d 559, 561 (8th Cir. 1974); accord United States v. Poole, 545 F.3d 916, 918 (10th Cir. 2008). And, Howard does not even remotely support the idea that polling a unanimous jury in open court may be a coercive action.[5]

As a final act of inconsistency, the district court found sufficient evidence to convict Javier of the conspiracy but seems to, in part, base its new trial ruling on a *latent* observation that the evidence against Javier was "underwhelming." Of course, even a cursory review of the trial record refutes this idea.

---

[5]The court majority finds that the district court did not abuse "its discretion when it determined that the errors affected Javier's substantial rights." Relying on Brasfield v. United States, 272 U.S. 448 (1926), and Amos v United States, 496 F.2d 1269 (8th Cir. 1974), the court majority seems to indicate that the district court's polling procedure may have coerced the jury. Brasfield is, of course, inapposite as it involved a situation where the trial judge polled a *deadlocked* jury, a practice that "is never useful and is generally harmful, [and] not to be sanctioned." 272 U.S. at 449. Here, however, we are not dealing with a deadlocked jury as the jury foreperson announced to the district court that the jury had reached a unanimous verdict, the verdict form showed that the jurors had unanimously found Javier committed an objective of the money laundering conspiracy, and subsequent polling revealed unanimity. And, far from coercive conduct, in Amos, we actually sanctioned the trial court's conduct of polling and engaging a single juror "to dispel any confusion" in the verdict. 496 F.2d at 1273. In sum, Brasfield and Amos do not establish coercion in this case and certainly do not establish that the procedure utilized affected Javier's substantial rights.

The de minimis nature of any substantive issue of lack of clarity in the jury instructions as a whole, the strength of the evidence of Javier Amaya's guilt, the total lack of any indication of the trial judge's ability to sway the jury's decision-making capabilities by polling a wholly unanimous jury in open court, and the obvious strength of the twice repeated jury polls makes judicial abuse of discretion a palpable reality in this case. I dissent.

_____